**Gregory R. MATTOX and Barbara Wilkerson, Appellants,**

v.

**GRIMES COUNTY COMMISSIONERS COURT, Betty Shiflett, Grimes County Judge, John Bertling, County Commissioner Precinct 1, and Pam Finke, County Commissioner Precinct 4, Appellees.**

No. 14–08–00193–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 28, 2010.

Rehearing Overruled March 18, 2010.

Gary L. Leonard, Houston, for appellants.

Jon Christopher Fultz, Anderson, for appellees.

Panel consists of Chief Justice HEDGES and Justices YATES and FROST.

## MAJORITY OPINION ON REHEARING

ADELE HEDGES, Chief Justice.

We overrule appellants' and appellees' motions for rehearing, vacate and withdraw our majority opinion and judgment dated October 29, 2009, and issue this majority opinion on rehearing and judgment in their place. Appellants, Gregory R. Mattox and Barbara Wilkerson, appeal the trial court's judgment denying their petition for writ of mandamus to compel appellees, Grimes County Commissioners Court, Betty Shiflett, John Bertling, and Pam Finke, to order the cancellation of a roadway dedication. In five issues, appellants argue that: (1) the trial court erred by

denying their petition for writ of mandamus; (2) the affidavits attached to appellees' motion for summary judgment were not competent summary judgment evidence; (3) the trial court erred by denying appellants' motion for summary judgment; (4) the trial court erred by granting appellees' motion for summary judgment; and (5) the trial court erred by denying appellants' motion for sanctions. We reverse and remand.

## I. BACKGROUND

Appellants purchased lots 35 and 36 of the Hill Forest Manor subdivision in May 2005. The two adjoining lots were located in the southwest corner of Hill Forest Manor. After purchasing their lots, appellants learned that a portion of an unpaved roadway dedicated as a county road encroached upon their newly acquired property. The dedicated county road, Hill Forest Lane, ran across the southern border of Hill Forest Manor, and the last 134 feet on the west part of Hill Forest Lane extended across appellants' property. Appellants sought to cancel the dedication on the 134–foot portion of Hill Forest Lane that extended onto their property by filing an application with the commissioners court pursuant to chapter 232 of the Local Government Code.

### A. Proceedings Before Grimes County Commissioners Court

Section 232.008(e) of the Local Government Code mandates a commissioners court to authorize cancellation of "a subdivision or any phase or identifiable part of a subdivision, including a dedicated easement or roadway" upon application by "the owners of 75 percent of the property included in the subdivision, phase or identifiable part."[1] Section 232.008(e) further provides that "if owners of at least 10

---

1. *See* Tex. Loc. Gov't Code § 232.008(e).

percent of the property affected by the proposed cancellation file written objection to the cancellation with the court, the grant of an order of cancellation is at the discretion of the court." [2] After appellants filed their application to cancel the dedication, proper notices were filed, and a hearing was conducted before the commissioners court.

At the hearing, appellants presented their application and argued that cancellation was mandatory under section 232.008(e) because (1) the 134–foot portion of Hill Forest Lane sought to be cancelled was an "identifiable part" of Hill Forest Manor for purposes of subsection (e), (2) appellants owned 100% of this identifiable part, (3) no written objection to the proposed cancellation had been made by owners of at least 10% of the property to be cancelled, and (4) the cancellation did not interfere with the established rights of any owner in Hill Forest Manor.

In response, the county and counsel for Clifford and Eleanor Jackson (collectively "the Jacksons"), adjoining landowners, argued that cancellation was not mandatory, but discretionary under section 232.008(h). Subsection (h) vests a commissioners court with discretion to grant or deny a request to cancel a roadway dedication if "the cancellation will prevent the proposed interconnection of infrastructure to pending or existing development." [3] Relying on subsection (h), the Jacksons argued that they owned land immediately outside of Hill Forest Manor, but adjoining appellants' lots ("the Jackson property"), and the proposed cancellation would affect any intended, pending, and existing development on the Jackson property. Specifically, the Jacksons argued that they had prepared an unrecorded plat dividing their property

into various lots and had been selling those partitioned lots. The Jacksons further claimed that they intended to divide other parts of their property and sell those partitioned parts in the future. However, such development would be vitiated by the proposed cancellation because Hill Forest Lane is the only road that could provide adequate access to developments on the Jackson property. The only other access to the Jackson property was by way of a 36–foot–wide easement, a path that was insufficient to accommodate access to any pending or prospective developments on the Jackson property. Appellants disputed the applicability of subsection (h), contending that there was no evidence in the county records of a pending or existing development on the Jackson property. Appellants further contended that the Jacksons had not sold any part of their property since 1995.

The county argued that Hill Forest Lane was a public road and provided access to other residents. Petitions signed by county residents generally opposing "the closing of any county road" in Grimes County were submitted to the commissioners court for consideration. Additionally, a former county commissioner and local resident both appeared before the commissioners court and expressed their opposition to the proposed cancellation. At the close of the hearing, two of the four county commissioners and the county judge voted to deny appellants' application to cancel the road dedication. The county judge and two commissioners voting to deny the application are appellees Betty Shiflett, John Bertling, and Pam Finke. Subsequently, appellants challenged the commissioners court's act by filing a petition for writ of mandamus with the district court.[4]

---

2. *See id.*

3. *Id.* § 232.008(h).

4. District courts have original proceeding jurisdiction to review and issue writs of mandamus against a commissioners court. *See* Tex.

## B. Mandamus Proceeding Before the District Court

In their petition for writ of mandamus, appellants asked the trial court to order appellees to cancel the roadway dedication on the portion of Hill Forest Lane that extended onto their property because the commissioners court was required to do so under section 232.008(e). Specifically, appellants argued that they owned 100% of the portion of the roadway sought to be cancelled, and no written objection by owners of at least 10% of the affected property had been filed with the court. Furthermore, appellants argued that the exception under subsection (h) vesting a commissioners court with discretion to deny an application to cancel a roadway dedication did not apply because there were no proposals for interconnecting infrastructure to the Jackson property and no pending or existing developments on the Jackson property. Appellants urged the trial court to grant their writ and mandamus the commissioners court to order cancellation of the 134–foot portion of Hill Forest Lane that encroached upon their property.

Appellees responded to the writ by general denial and, subsequently, by amended answer. In the amended answer, appellees specifically denied the allegations set forth in appellants' petition for writ of mandamus. Appellees contended that subsection (h) authorized the commissioners court to deny appellants' application to cancel Hill Forest Lane because (1) the proposed cancellation would prevent an interconnection between Hill Forest Manor and the Jackson property and (2) there was pending and existing development on the Jackson property. Thereafter, both parties moved for summary judgment, primarily disputing the applicability of subsection (h). Both parties submitted affida-vits supporting their position as to whether (1) there was a proposed interconnection between Hill Forest Manor and the Jackson property and (2) there was pending or existing development on the Jackson property. The trial court ultimately found in favor of appellees, denying appellants' motion for summary judgment and sanctions and granting appellees' motion for summary judgment.

## C. Issues on Appeal

On appeal, appellants challenge the trial court's judgment in favor of appellees. In issues one, three, and four, appellants challenge the applicability of subsection (h): whether there was competent summary judgment evidence reflecting a proposed interconnection between Hill Forest Lane and pending or existing development on the Jackson property. In their second issue, appellants contend that the affidavits attached to appellees' summary judgment motion were not competent summary judgment evidence. In their fifth issue, appellants contend that the trial court erred in denying their motion for sanctions.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Appellants moved for summary judgment under rule 166a(c), while appellees moved for summary judgment under both rule 166a(c) and rule 166a(i). Traditional summary judgment under civil procedure rule 166a(c) is proper only when a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Mayer v. Willowbrook Plaza Ltd. P'ship*,

Const. art. V, § 8; Tex. Gov't Code 24.011; *see also Sheppard v. Thomas*, 101 S.W.3d 577, 580–81 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

278 S.W.3d 901, 908 (Tex.App.-Houston [14th Dist.] 2009, no pet.). In deciding whether there is a disputed issue of material fact, every doubt must be resolved in favor of the nonmovant, and evidence favorable to the nonmovant must be taken as true. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex.2004).

Under rule 166a(i), a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* Tex.R. Civ. P. 166a(i); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005). To defeat a no-evidence motion for summary judgment, the nonmovant must produce summary judgment evidence raising a genuine issue of material fact. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004); *McInnis v. Mallia*, 261 S.W.3d 197, 202 (Tex.App.-Houston [14th Dist.] 2008, no pet.). A genuine issue of material fact exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). If the evidence does no more than create a mere surmise or suspicion of fact, less than a scintilla of evidence exists, summary judgment is proper. *See id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)).

When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Tex. Worker's Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex.2004). We must affirm a summary judgment if any of the summary judgment grounds are meritorious. *Id.*

### B. Petition for Writ of Mandamus

 In this case, appellants did not pursue a direct appeal from the commissioners court's decision to the district court. Rather, appellants filed an original proceeding in the trial court seeking a writ of mandamus against the commissioners court and those who voted against appellants' application to cancel the roadway dedication. Generally, a party is entitled to mandamus relief against a public official when there is (1) a legal duty to perform a nondiscretionary act, (2) a demand for performance of that act, and (3) a refusal to perform. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex.1991); *Sheppard v. Thomas*, 101 S.W.3d 577, 581 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). An act is nondiscretionary, or ministerial, when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion.[5] *Anderson*, 806 S.W.2d at 793; *Sheppard*, 101 S.W.3d at 581; *Harris County v. Walsweer*, 930 S.W.2d 659, 667–68 (Tex.App.-Houston [1st Dist.] 1996, writ denied). The burden is upon the petitioner to negate by affirmative allegation and prove every fact or condition which would have authorized the public official to take action sought to be enforced upon him. *Wortham v. Walker*, 133 Tex. 255, 128 S.W.2d 1138, 1151 (1939); *Rash v. City Council of City of Houston*,

---

5. The Texas Supreme Court has recognized an exception, however, which authorizes mandamus relief in cases involving a discretionary act: "a writ of mandamus may issue in a proper case to correct a clear abuse of discretion by a public official." *Anderson*, 806 S.W.2d at 793.

557 S.W.2d 324, 326 (Tex.Civ.App.-Houston [1st Dist.] 1977, writ ref'd n.r.e.).

On rehearing, appellees argue that we applied the wrong standard of review, namely, that we "improperly concluded that the trial court's review of the [commissioners court's] action is subject to a sufficiency standard[,] which requires that the commissioners (sic) court prove that the evidence preponderates in favor of its decision." According to appellees, "[t]he proper standard of review, which was employed by the trial court, is whether the commissioners court abused its discretion, and the burden of proving such lies on [a]ppellants." Appellees urge that we re-examine this case applying the standard of review that the Austin court applied in *Griffin v. Birkman.* 266 S.W.3d 189, 197 (Tex.App.-Austin 2005, pet. denied).

In *Griffin,* a constable directly appealed a commissioners court's budgetary decision by filing a declaratory judgment action in the district court. In reviewing the constable's direct appeal, the Austin court cited and applied a hybrid standard of review: "whether the trial court had sufficient information upon which to exercise its discretion by making a decision that was arbitrary or unreasonable based on the evidence elicited[,]" or "stated [another way], the order is reviewed to determine whether it is arbitrary, capricious, unsupported by substantial evidence or that the court has acted beyond its jurisdiction." *Id.* Procedurally, *Griffin* involved a direct appeal of a commissioners court's budgetary decision by the filing of a declaratory judgment action in the district court. In contrast, appellants in the instant case invoked the district court's original proceeding jurisdiction by filing a petition for writ of mandamus. *See* Tex. Const. art. V, § 8; Tex. Gov't Code § 24.011 (the district court may "grant writs of mandamus ... and all other writs

necessary to the enforcement of the trial court's jurisdiction"); *see also Sheppard,* 101 S.W.3d at 581 (acknowledging that "section 24.011 represents the *sole authority* vesting a district court with the authority to conduct a mandamus proceeding against a public official") (emphasis added). "A writ of mandamus will issue to compel a public official to perform a ministerial act." *Anderson,* 806 S.W.2d at 793–94. The district court in *Griffin* was not petitioned to mandamus a public official to perform a ministerial act. By appellants invoking the trial court's original proceeding jurisdiction in this case, the trial court was required to determine whether a public official—the commissioners court—had refused to perform a ministerial act—denying appellants' petition for cancellation under the Local Government Code. *See id.; Sheppard,* 101 S.W.3d at 581–82. The standard of review in *Griffin* obtains only when an act sought to be ordered is discretionary and is pursued in an action other than a mandamus proceeding. Therefore, that standard of review is not appropriate in the instant case.

Furthermore, appellees confuse a petitioner's burden in a mandamus proceeding with a movant's burden in a summary judgment. In petitioning for mandamus relief, appellants had the burden of proof at trial to show that the act in question was a ministerial act, warranting mandamus relief. *Wortham,* 128 S.W.2d at 1151; *Rash,* 557 S.W.2d at 326. However, by affirmatively moving for summary judgment, appellees had to prove as a matter of law that they were entitled to summary judgment relief. *See* Tex.R. Civ. P. 166a(c), (i). In this case, appellees assumed the burden of proof that, as a matter of law, their act was discretionary.

Appellees also confuse the standard of review in a mandamus proceeding with the standard of review in a summary judg-

ment. We realize that the posture of the case is uncommon, reviewing a trial court's summary judgment denying a petition for writ of mandamus. Essentially, the trial court's summary judgment was based on its conclusion that (1) the public official's act in question was discretionary as a matter of law and (2) appellants had failed to produce evidence raising a genuine issue of material fact as to whether the act was ministerial, in which case mandamus relief would be warranted. We find the Texas Supreme Court's decision in *Anderson* persuasive and controlling on the standard-of-review question.

In *Anderson*, citizens of the City of Seven Points filed a petition requesting that the city's mayor order an election on the question of abolishing the corporate existence of the city. "The petition requesting that the mayor order … an election was filed pursuant to section 62.002 of the Texas Local Government Code which states: The mayor of the municipality shall order an election on the question of abolishing the corporate existence … if a majority of the qualified voters of the municipality is less than 400[and] the petition [is] signed by at least two-thirds of the qualified voters of the municipality." *Anderson*, 806 S.W.2d at 793 (emphasis in original). After the mayor refused to order the election, a group of citizens filed a petition for writ of mandamus in district court. After a hearing on the merits, the trial court granted the petition for writ of mandamus and ordered the mayor to order the election. The court of appeals reversed, concluding "the citizens failed to discharge their burden to present evidence that demonstrated that the mayor's refusal to grant the petition and order the election was arbitrary and unreasonable." *Id.*

In reviewing the trial court's decision to mandamus the mayor, the Texas Supreme Court reasoned that section 62.002 spelled out the act to be performed by the mayor with "sufficient certainty so that nothing [was] left to the exercise of discretion." *Id.* Thus, once the "trial court determined that a majority of the qualified voters was less than 400 and the petition was signed by at least two-thirds of the qualified voters, the mayor had no discretion; therefore, the act became ministerial and the trial court was required to grant the petition for writ of mandamus and order an election on the question of abolishing the city's corporate existence." *Id.* at 793–94. The Court then determined whether "the evidence [was] legally sufficient to support the trial court's finding that the petition was signed by at least two-thirds of the qualified voters." *Id.* at 794.

Similar to the trial court in *Anderson*, the lower court in this case had to decide whether there was sufficient evidence of (1) a proposed interconnection between Hill Forest Manor and the Jackson property and (2) a pending or existing development on the Jackson property, because such evidence determined whether the act was ministerial. Following the Texas Supreme Court's decision in *Anderson*, we conclude that the issue on appeal is not whether the commissioners court abused its discretion in denying appellants' petition for cancellation, but whether the evidence established as a matter of law that the act in question—granting the petition for cancellation—was discretionary, as opposed to ministerial. *See id.* at 793; *see also Sheppard*, 101 S.W.3d at 581–83. Thus, if section 232.008(e) is controlling, the commissioners court had no discretionary authority to deny the petition, because appellants established its criteria as a matter of law. In contrast, if section 232.008(h) applies, trumping subsection (e), the commissioners court had discretion to deny the petition. The trial court properly granted summary judgment in favor of appellees only if appellees established as a

matter of law that section 232.008(h) applies. There must be no genuine issue of material fact concerning the existence of authoritative criteria under section (h). The trial court should have granted appellant's motion for summary judgment only if appellants had established as a matter of law that section 232.008(e) was controlling.[6]

## III. ANALYSIS

Appellants first argue that mandamus should be granted exclusively on appellees' failure to file a verified response to the petition for writ of mandamus. After appellants filed their petition with the trial court, appellees filed a general unverified denial and, later, an amended verified answer specifically denying the petition's allegations. Appellants argue that because appellees failed to file a verified response, we must take the allegations in the petition as true and grant mandamus based exclusively on appellees' failure to file a verified response. *See Patton v. Terrell*, 101 Tex. 221, 105 S.W. 1115, 1116 (1907); *Sansom v. Mercer*, 68 Tex. 488, 5 S.W. 62, 65–66 (1887). Contrary to appellants' assertions, appellees disputed the petition's allegations with a *verified* amended answer specifically contesting the allegations set for in the petition. Accordingly, we find that appellants are not entitled to mandamus relief on this basis.

### A. Section 232.008(e)

Section 232.008(e) mandates a commissioners court to order the cancellation of "a subdivision or any phase or identifiable part of a subdivision, including a dedicated easement or roadway" upon application by "the owners of 75 percent of the property included in the subdivision, phase or identifiable part." Tex. Loc. Gov't Code § 232.008(e). However, "if owners of at least 10 percent of the property affected by the proposed cancellation file written objection to the cancellation with the court, the grant of an order of cancellation is at the discretion of the court." *Id.* Accordingly, if an applicant shows that he is the owner of at least 75% of the property to be cancelled and no written objection is filed with the court by owners of at least 10% of the property affected by the proposed cancellation, the act of cancellation is ministerial, leaving nothing to the exercise of discretion by the commissioners court. *See id.; see also Anderson*, 806 S.W.2d at 793.

In the sworn application for cancellation, the petition for writ of mandamus, and appellants' sworn affidavits, appellants averred that the 134 feet of Hill Forest Lane sought to be cancelled lay wholly within their two lots; thus, they owned 100% of the identifiable part sought to be cancelled. Furthermore, appellants averred that because they owned 100% of the property to be cancelled, no written objection by owners of at least 10% of the same property could be filed with the court and indeed had not been filed. Appellees do not dispute appellants' evidence supporting the subsection (e) requirements, which generally would render the act of cancellation ministerial. Instead, appellees argue that the commissioners court's determination is a discretionary act under subsection (h), trumping subsection (e).

### B. Applicability of Section 232.008(h) [7]

Section 232.008(h) provides that "[t]he commissioners court may deny a

---

6. We also note that appellants, by petitioning for mandamus relief, had the burden of proof at trial. *Wortham*, 128 S.W.2d at 1151; *Rash*, 557 S.W.2d at 326. However, appellees, by affirmatively moving for summary judgment, had to prove as a matter of law that they were entitled to summary judgment relief.

7. Subsection (h) applies only to land subdivided or plats filed on or after its effective date of

cancellation under this section if the commissioners court determines the cancellation will prevent the proposed interconnection of infrastructure to pending or existing development." Tex. Loc. Gov't Code § 232.008(h). The parties dispute whether the cancellation will prevent a proposed interconnecting infrastructure from Hill Forest Manor to the Jackson property and whether there is a pending or existing development on the Jackson property.

### 1. Proposed Interconnection

Appellants request that we define "proposed interconnection" as "a proposal or a proffer to another party, in this case" the county commissioners court. We reject this interpretation of "proposed interconnection." We review the statutory construction of the term "proposed interconnection" under a *de novo* standard. *See Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex.2002). In construing statutory provisions, our objective is to determine and give effect to the legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). We assume that the legislature tried to say what it meant; therefore, its words should be the surest guide to its intent. *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 286 (Tex.App.-Houston [1st Dist.] 2004, pet. dism'd). If the meaning of the statutory language is unambiguous, we will adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). We must not engage in forced or strained construction; instead we yield to the plain sense of the words the legislature chose. *See id.*

The unambiguous meaning of proposed is to "intend," "suppose," or "to offer for consideration, discussion, acceptance, or adoption." *See* Webster's Third New Int'l Dictionary 1819 (1993). Thus, the plain language of subsection (h) requires a showing of an (1) infrastructure that is *intended* to be used as the interconnection or (2) interconnection *offered for consideration* as the interconnecting infrastructure. Contrary to appellants' argument, the plain unambiguous language of subsection (h) does not require that the "proposed interconnection" be formally dedicated by or filed or platted with the county. Moreover, the plain unambiguous language of subsection (h) does not require that the "proposed interconnection" be *recently* dedicated or platted. We conclude that the plain unambiguous meaning of "proposed interconnection" under subsection (h) is infrastructure that is *intended* to be used as the interconnection or an interconnection *offered for consideration* as the interconnecting infrastructure.

With respect to the evidence produced on the proposed interconnection between Hill Forest Manor and the Jackson property, appellants relied on the affidavit of County Commissioner Bill Pendley, who voted to grant appellants' application for cancellation. Pendley indicated that there was "no proposal pending before the Commissioners Court with regard to making an interconnection between the Jackson property and Hill Forest Manor." Appellants also argue that no proposals or plats had been filed for an interconnecting infrastructure between Hill Forest Manor and the Jackson property.

September 1, 1999. *See* Act of May 5, 1999, 76th Leg., R.S., ch. 129, § 8, secs. 7, 10, 1999 Tex. Gen. Laws 574, 578. Because neither party challenges the applicability of subsection (h) on the basis of its September effective date, we do not review the applicability of subsection (h) on this ground.

Disputing appellants' evidence, appellees submitted the minutes and transcript from the hearing before the commissioners court, together with the affidavits of Betty Shiflett, John Bertling, and Pam Finke. The hearing minutes and transcript reflect that Hill Forest Manor was platted with the "intent to leave a road that could" be used to access the Jackson property and that "Hill Forest Lane was platted up to the Jackson property with this in mind." Appellees argue that because Hill Forest Lane was originally platted up to the Jackson property, in part, to provide access to the Jackson property, Hill Forest Lane is the proposed interconnection between Hill Forest Manor and the Jackson property and that cancelling the last 134 feet of Hill Forest Lane connecting Hill Forest Manor to the Jackson property would prevent interconnection between the properties.

We find that the Pendley affidavit and the hearing minutes and transcript submitted by the parties create a genuine issue of material fact as to whether there is a proposed interconnection of infrastructure between Hill Forest Manor and the Jackson property, namely, whether Hill Forest Lane, a platted county road, is a "proposed interconnection of infrastructure" between Hill Forest Lane and the Jackson property and whether cancellation of the last 134 feet of Hill Forest Lane would prevent that proposed interconnection. Having found a genuine issue of material fact on the first subsection (h) requirement, we now turn to the second requirement.

### 2. Pending or Existing Development

■ Appellants also rely on the Pendley affidavit to support their contention that there was no pending or existing development on the Jackson property. Pendley attested in his affidavit that there was "no subdivision or development of any kind" on the Jackson property and Clifford Jackson told Pendley that he, Clifford Jackson, "was not going to develop his land because he was too old, [but] ... wanted to keep the option open."

Appellees attempt to dispute appellants' evidence by asserting an intent to develop the Jackson property. Appellees also cite to portions of the hearing transcript presenting evidence of a pending or existing development on the property. The cited portions of the transcript reflect that the Jacksons had prepared unrecorded plats dividing their land into separate tracts and that they had been selling those partitioned tracts. We find that this evidence compared with the Pendley affidavit creates a genuine issue of material fact as to whether there is a pending or existing development on the Jackson property. Because there are genuine issues of material fact as to whether subsection (h) applies, neither party is entitled to summary judgment.

The evidence submitted for summary judgment does not conclusively prove that subsection (e) is controlling over subsection (h). Appellants, therefore, did not meet their burden of proof and were not entitled to mandamus as a matter of law. Accordingly, we overrule appellants' first and third issues. Moreover, appellees were not entitled to summary judgment because genuine issues of material fact precluded such relief. The evidence reflects a factual dispute as to whether subsection (h) applies, which ultimately determines whether appellants are entitled to mandamus relief against appellees. Accordingly, we sustain appellants' fourth issue.[8]

8. In their second issue, appellants challenge the affidavits of Betty Shiflett, John Bertling, and Pam Finke on the basis that they contain conclusory statements. Having found that

### C. Motion for Sanctions

In their last issue, appellants argue that the trial court erred in denying their motion for sanctions. Below, appellants filed a motion for sanctions against appellees and county attorney Jon C. Fultz, asserting multiple grounds, including filing groundless pleadings for improper purposes and in bad faith and making false and misleading representations to the court. Appellants requested sanctions pursuant to Rule 13 of the Texas Rules of Civil Procedure and section 10.001 of the Texas Civil Practice and Remedies Code. *See* Tex.R. Civ. P. 13; Tex. Civ. Prac. & Rem.Code § 10.001.

■ A trial court's ruling on a motion for sanctions is reviewed under an abuse-of-discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex.2004). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Id.* at 838–39. Civil procedure rule 13 authorizes sanctions against an attorney, a represented party, or both if the evidence establishes a pleading is either (1) groundless and brought in bad faith, or (2) groundless and brought to harass. Tex.R. Civ. P. 13. Groundless "means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.*

■ Sanctions under chapter 10 of the Civil Practice and Remedies Code are authorized if the evidence establishes that (1) a pleading or motion was brought for an improper purpose, (2) there were no grounds for legal arguments advanced, or (3) a factual allegation or denial lacked evidentiary support. Tex. Civ. Prac. & Rem.Code § 10.001. Furthermore, we must presume that the challenged pleadings were filed in good faith. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex.2007); *Thottumkal v. McDougal*, 251 S.W.3d 715, 718 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). The party seeking sanctions bears the burden of overcoming the presumption of good faith in the filing of pleadings. *Low*, 221 S.W.3d at 614.

■ Appellants sought sanctions based primarily upon their belief that appellees filed pleadings and affidavits containing false and misleading statements. Appellants also argue on appeal that they were entitled to sanctions against appellees because appellees did not respond to their motion for sanctions. The motion filed with the trial court sought sanctions for appellants' belief that the pleadings and affidavits asserted false and misleading statements. However, those beliefs were not supported by sufficient evidence. Although appellants accompanied their sanctions motion with exhibits, the evidence did not establish that appellees knowingly filed pleadings with false or misleading statements or knowingly filed false affidavits. The sanctions evidence simply controverts appellees' position in the mandamus proceeding. Appellees' motion essentially sought sanctions for their disagreement with the factual and legal assertions made by appellees, which does not warrant sanctions. Therefore, we cannot conclude on the record before us that appellees' claims,

the hearing transcript alone, which is not challenged on appeal and is relied upon by both parties, creates a genuine issue of material fact and, thus, precludes summary judgment for either party, we need not address the propriety of the affidavits submitted by appel-

lees. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–55 (Tex.1995) (concluding that successful evidentiary challenge requires a showing that the judgment turned on the complained-of evidence). Accordingly, we overrule issue two.

pleadings, or evidence had no basis in law or fact or that the pleadings were not supported by a good faith argument. Further, we cannot conclude that appellees acted in bad faith or for the purpose of harassment or for any improper purpose in attempting to defend against appellants' petition for writ of mandamus. Accordingly, the trial court did not abuse its discretion in denying appellants' request for sanctions. We overrule appellants' fifth issue.

## IV. CONCLUSION

We overrule appellants' first, second, third, and fifth issues. Further, we sustain appellants' fourth issue, reverse the summary judgment in favor of appellees, and remand to the trial court for further proceedings consistent with this opinion.

FROST, J., dissenting.

KEM THOMPSON FROST, Justice, dissenting on rehearing[1].

This case involves the interpretation of section 232.008 of the Texas Local Government Code, which governs cancellation of all or part of a subdivision located outside of any municipality. Two landowners invoking this statute applied to a county commissioners court for cancellation of part of a dedicated roadway. The court denied the application, and the landowners brought suit in the district court below seeking a writ of mandamus commanding the commissioners court to grant the requested cancellation. The district court denied the landowners' motion for summary judgment and granted the motion for summary judgment filed by the commissioners-court defendants. Inasmuch as the landowners sought a cancellation not

afforded under section 232.008, the district court did not err in denying the landowners' motion for summary judgment. Because the summary-judgment evidence did not prove as a matter of law that the commissioners-court defendants were entitled to summary judgment under the ground asserted in their motion for summary judgment, the district court erred in granting the defendants' motion. The district court's judgment should be reversed and the case should be remanded for further proceedings consistent with this analysis. Because this court reverses and remands based on a different analysis, I respectfully dissent.

### Background

In May 2005, appellants Gregory R. Mattox and Barbara Wilkerson (collectively referred to hereinafter as the "Mattox Parties") purchased lots 35 and 36 in the Hill Forest Manor Subdivision (hereinafter the "Subdivision"). These lots are in the southwest corner of the Subdivision, and lot 36 borders undivided acreage to the west that is currently owned by Clifford and Eleanor Jackson (collectively "the Jacksons"). A dedicated road, known as Hill Forest Lane, runs along the southern border of the Subdivision. According to the plat for the Subdivision, the western end of Hill Forest Lane stops at the Jacksons' property and forms the southern border of lots 35 and 36. There is no road on the Jacksons' property leading up to this corner of their land that the plat reflects borders on Hill Forrest Lane.

The Mattox Parties assert that when they purchased their land, most of what the plat shows as the part of Hill Forrest Lane south of their property was not being maintained as a road. The Mattox Parties

1. The dissenting opinion of October 29, 2009, is withdrawn, and this dissenting opinion on rehearing is issued in its place.

claim that they believed that this area was part of the land that they bought and was not part of Hill Forrest Lane. After the Mattox Parties cleaned out the weeds, brush, and debris in this area, they learned that some people in the Subdivision contended that this land was part of Hill Forest Lane, which is a county road.

## Procedural History

According to the Mattox Parties' pleading in the district court below, the Mattox Parties first filed an application with the Grimes County Commissioners Court ("Commissioners Court") asking the court to abandon or vacate that part of Hill Forrest Lane, but the court denied the application in July 2006. *See* TEX. TRANSP. CODE ANN. § 251.051 (Vernon 1999) (providing that commissioners courts have the authority to close, abandon, or vacate a public road).

In April 2007, the Mattox Parties filed an "APPLICATION TO CANCEL DEDICATION" with the Commissioners Court. In this application, the Mattox Parties asked the court to "cancel the dedication of that portion of HILL FOREST LANE shown on the plat of HILL FORREST MANOR SUBDIVISION . . . beginning at the west side of our property and extending 134 feet toward the east and ending at the place where GRIMES COUNTY currently begins maintaining HILL FORREST LANE, which is the west terminating end of HILL FORREST LANE." In their application, the Mattox Parties relied on section 232.008 of the Texas Local Government Code[2] as the basis for the relief they requested. *See* TEX. LOC. GOV'T CODE ANN. § 232.008 (Vernon 2005). On June 11, 2007, the Commissioners Court considered the Mattox Parties' application. Af-

ter hearing argument from counsel for the Mattox Parties and counsel for the Jacksons, the Commissioners Court denied the application by a 3–2 vote.

The Mattox Parties then filed a petition for writ of mandamus in the district court below against the Commissioners Court, Grimes County Judge Betty Shiflett, Grimes County Commissioner for Precinct 1 John Bertling, and Grimes County Commissioner for Precinct 4 Pam Finke (hereinafter collectively "Commissioners Court Parties"). The Mattox Parties asserted that the Commissioners Court Parties had no discretion to deny the Mattox Parties' section 232.008 application, and on this basis the Mattox Parties sought a writ of mandamus compelling the Commissioners Court Parties to grant this relief.

The Mattox Parties filed a motion for summary judgment asserting they were entitled to the relief they sought as a matter of law. The Commissioners Court Parties filed a motion for summary judgment asserting that, as a matter of law, the Commissioners Court had discretion to deny the application under subsection (h) of section 232.008. The district court denied the former motion and granted the latter motion. The propriety of both rulings is before this court on appeal.

## The Statute

The first and third issues raise the question of the proper interpretation of section 232.008. This statute, entitled "Cancellation of Subdivision," contains the following language:

> (b) A person owning real property in this state that has been subdivided into lots and blocks or into small subdivisions may apply to the commissioners court of

---

2. Unless otherwise stated, all statutory references in this opinion are to the Texas Local Government Code.

the county in which the property is located for permission to cancel all or part of the subdivision, including a dedicated easement or roadway, to reestablish the property as acreage tracts as it existed before the subdivision. If, on the application, it is shown that the cancellation of all or part of the subdivision does not interfere with the established rights of any purchaser who owns any part of the subdivision, or it is shown that the purchaser agrees to the cancellation, the commissioners court by order shall authorize the owner of the subdivision to file an instrument canceling the subdivision in whole or in part. The instrument must describe the subdivision or the part of it that is canceled. The court shall enter the order in its minutes. After the cancellation instrument is filed and recorded in the deed records of the county, the county tax assessor-collector shall assess the property as if it had never been subdivided.

. . .

(d) If delinquent taxes are owed on the subdivided tract for any preceding year, and if the application to cancel the subdivision is granted as provided by this section, the owner of the tract may pay the delinquent taxes on an acreage basis as if the tract had not been subdivided. For the purpose of assessing the tract for a preceding year, the county tax assessor-collector shall back assess the tract on an acreage basis.

(e) On application for cancellation of a subdivision or any phase or identifiable part of a subdivision, including a dedicated easement or roadway, by the owners of 75 percent of the property included in the subdivision, phase, or identifiable part, the commissioners court by order shall authorize the cancellation in the manner and after notice and a hearing as provided by Subsections (b) and (c). However, if the own-ers of at least 10 percent of the property affected by the proposed cancellation file written objections to the cancellation with the court, the grant of an order of cancellation is at the discretion of the court.

. . .

(g) A person who appears before the commissioners court to protest the cancellation of all or part of a subdivision may maintain an action for damages against the person applying for the cancellation and may recover as damages an amount not to exceed the amount of the person's original purchase price for property in the canceled subdivision or part of the subdivision. The person must bring the action within one year after the date of the entry of the commissioners court's order granting the cancellation.

(h) The commissioners court may deny a cancellation under this section if the commissioners court determines the cancellation will prevent the proposed interconnection of infrastructure to pending or existing development.

TEX. LOC. GOV'T CODE ANN. § 232.008.

## Standards of Review

This court reviews the district court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth,* 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). If possible, this court must ascertain that intent from the language the legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, this court adopts the interpretation supported by the

plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). This court must not engage in forced or strained construction; instead, it must yield to the plain sense of the words the legislature chose. *See id.*

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000). In our de novo review of a trial court's summary judgment, this court considers all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 756 (Tex.2007).

The district court denied the motion for summary judgment filed by the Mattox Parties. In this motion, the Mattox Parties sought a final summary judgment; therefore, this court may review the district court's denial of the Mattox Parties' motion. *See CU Lloyd's of Texas v. Feldman,* 977 S.W.2d 568, 569 (Tex.1998). When both sides move for summary judgment, each side must carry its own burden, and neither can prevail because of the failure of the other to discharge its burden. *INAC Corp. v. Underwriters at Lloyd's,* 56 S.W.3d 242, 247 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Because parties on each side were movants, the burden for

each was the same: to establish entitlement to a summary judgment by conclusively proving the independent grounds for summary judgment asserted in their respective motions. *See id.*

## The Mattox Parties' Motion

In the Mattox Parties' traditional motion for summary judgment ("Mattox Parties' Motion"), they asserted that there were no genuine issues of material fact and that, as a matter of law, they were entitled to the mandamus relief requested in their petition. Specifically, they claimed that, as a matter of law, they were entitled to the relief they sought under section 232.008. In their first and third issues, the Mattox Parties assign as error the trial court's denial of the Mattox Parties' Motion and the trial court's refusal to grant the mandamus relief they sought as a matter of law. The Mattox Parties argue on appeal that they were entitled to mandamus as a matter of law because they satisfied every requirement of section 232.008 and thus the Commissioners Court Parties allegedly had a ministerial duty to grant the Mattox Parties' application. Therefore, the Mattox Parties have raised the issue of whether, in their application, they complied with section 232.008.

Research has revealed no cases addressing the scope of section 232.008 or the relief that may be granted thereunder. Based on the unambiguous language of this statute, one owning real property that has been subdivided into lots and blocks or into small subdivisions may apply to the commissioners court of the county in which the property is located for permission to cancel all or part of the subdivision, and the applicant may include in this proposed cancellation, the cancellation of a dedicated easement or roadway. *See* Tex. Loc. Gov't Code Ann. § 232.008(b). However, in this statute, the legislature states that the pur-

pose of any requested cancellation must be "to reestablish the property [that is the subject of the cancellation] as acreage tracts as it existed before the subdivision." *Id.* If the cancellation is granted, the commissioners court shall authorize "the owner of the subdivision to file an instrument canceling the subdivision in whole or in part" and describing "the subdivision or the part of it that is canceled." *Id.* After this instrument is filed and recorded, "the county tax assessor-collector shall assess the property as if it had never been subdivided." *Id.* Section 232.008 also states that, if cancellation is granted, then the county tax assessor-collector shall "back assess the tract" on an acreage basis. *Id.* § 232.008(d). While an applicant could seek to reestablish as acreage tracts some of the lots in a subdivision as well as part of a dedicated easement or roadway, cancellation of only part of a dedicated roadway would not reestablish any property as acreage tracts as it existed before the subdivision. *See id.* Therefore, under the unambiguous language of section 232.008, the commissioners court is not authorized to cancel only a dedicated easement or roadway or a portion thereof. This statute speaks to the cancellation of a subdivision or part thereof but not to the cancellation of only an easement or roadway (or some portion of an easement or roadway).[3] *See id.* The Mattox Parties sought relief that is not afforded under section 232.008. Accordingly, they did not prove as a matter of law that the Commissioners Court was required to grant their application under section 232.008, and the district court did not err in denying the Mattox Parties' Motion. For these reasons, the Mattox Parties' first and third issues should be overruled.[4]

### The Commissioners Court Parties' Motion

In their traditional motion for summary judgment, the Commissioners Court Parties asserted that, as a matter of law, subsection (h) applied and gave the Commissioners Court discretion to deny the Mattox Parties' application for cancellation.[5] Under the unambiguous language of subsection (h), if section 232.008 applied, the Commissioners Court had discretion to deny the Mattox Parties' application for cancellation if the Commissioners Court determined that such a cancellation "will prevent the proposed interconnection of infrastructure to pending or existing development." [6] *See* TEX. LOC. GOV'T CODE ANN.

---

3. Other statutes give commissioners courts the authority to close, abandon, vacate, or alter public roads. *See* TEX. TRANSP CODE ANN § 251.051 (Vernon 1999). Indeed, the Mattox Parties unsuccessfully sought such relief from the Commissioners Court in July 2006. The Mattox Parties have not sought mandamus relief regarding the Commissioners Court's denial of this relief, and they state in their live pleading in this case that the Commissioners Court correctly denied this application.

4. Another ground set forth in the Mattox Parties' Motion was that mandamus relief should be granted as a matter of law because the Commissioners Court Parties did not file a sufficient answer to the petition. This ground also lacks merit.

5. Though the applicability of section 232.008 is raised by the first and third issues, this issue is not raised by the fourth issue, because the Commissioners Court Parties did not raise this issue as a ground in their motion for summary judgment.

6. The legislature added subsection (h) to section 232.008 effective September 1, 1999, and subsection (h) applies only to land subdivided or a plat filed on or after September 1, 1999. *See* Act of May 5, 1999, 76th Leg., R.S., ch. 129, § 10, 1999 Tex. Gen. Laws 574, 578. Though this case does not involve land subdivided after this date or a plat filed after this date, the Mattox Parties did not raise this issue in the district court or on appeal. Therefore, for the purposes of this appeal, this

§ 232.008(h). As explained by the majority, the summary-judgment evidence did not prove as a matter of law that there was pending or existing development on the Jacksons' property. *See ante* at p. 385. Therefore, the district court erred in granting the motion filed by the Commissioners Court Parties. This court should sustain the fourth issue and reverse the district court's summary judgment on this basis alone.[7]

## Conclusion

This court correctly reverses the district court's judgment and remands for further proceedings; however, rather than relying on the analysis set forth in the majority opinion, this court should remand for further proceedings consistent with the analysis set forth above.

court must presume that subsection (h) applies to this case.

7. The court correctly overrules the fifth issue and concludes that this court need not address the second issue.