Scott K. Field, Justice
Ruben Aleman, M.D., filed suit in Travis County seeking judicial review of the Texas Medical Board's order assessing an administrative penalty in the amount of $3,000 for his violation of Texas Health and Safety Code section 193.005(h). See Tex. Health & Safety Code § 193.005(h) (requiring person completing medical certification on death certificate to submit information and attest to its validity using electronic process approved by state registrar). The trial court affirmed the order except to the extent the order waived a statutory notice requirement related to initiation of formal disciplinary action for non-compliance with the Board's order. We will affirm the trial court's judgment.
BACKGROUND[1]
In 2007, the Texas Legislature passed a statute that requires the person in charge of interment or in charge of removal of a body from a registration district for disposal to file a death certificate electronically. See id. § 193.002. The statute also requires that the person completing the medical certification portion of a death certificate "shall submit the information and attest to its validity using an electronic process approved by the state registrar." See id. § 193.005(h).[2] The Texas State *29 Registrar[3] has established the Texas Electronic Registrar (TER) system for recording birth and death certificates. The Texas Electronic Death Registration (TEDR) is the portion of the system associated with certifying death certificates. To use the TEDR, a physician must submit an application, which can be done electronically or over the telephone. The State Registrar reviews the application and enters the physician's information into the TEDR system. Once enrolled in the TEDR system, a physician may use a password to access the TEDR system and may electronically submit, and attest to the validity of, the medical certification information for a death certificate.
Aleman holds a license to practice medicine issued by the Board. On July 29, 2011, Aleman provided the medical certification of the cause of death of decedent J.S. by signing a paper death certificate instead of submitting the information electronically using the TEDR.[4] In May 2013, the Board filed a complaint at SOAH seeking disciplinary action against Aleman. The complaint alleged that Aleman failed to use the TEDR system to provide the medical certification for J.S. The Board asserted that it was authorized by the Texas Medical Practice Act to take disciplinary action against Aleman for his failure to submit the medical certification electronically because, by doing so, he violated section 193.005 of the Texas Health and Safety Code. See Tex. Occ. Code §§ 164.051 (Board may take disciplinary action against person who "commits an act prohibited under Section 164.052"), .052(a)(5) (physician commits prohibited practice if he "commits unprofessional or dishonorable conduct that is likely to deceive or defraud the public, as provided by Section 164.053"), .053(a)(1) (for purposes of Section 165.052(a)(5), "unprofessional or dishonorable conduct likely to deceive or defraud the public includes conduct in which a physician commits an act that violates any state or federal law if the act is connected with the physician's practice of medicine").
Aleman filed a motion to dismiss, asserting that the Board lacked jurisdiction over the proceeding because, according to him, the formal complaint that the Board's staff attorney filed to initiate the disciplinary proceeding did not to comply with section 164.005 of the Texas Occupations Code. See id. § 164.005 ("Initiation of Charges; Formal Complaint"). Section 164.005 provides, in pertinent part:
(a) In this section, "formal complaint" means a written statement made by a credible person under oath that is filed and presented by a board representative charging a person with having committed an act that, if proven, could affect the legal rights or privileges of a license holder or other person under the board's jurisdiction.
(b) Unless otherwise specified, a proceeding under this subtitle or other applicable law and a charge against a license holder may be instituted by an authorized representative of the board.
*30 (c) A charge must be in the form of a written affidavit that:
(1) is filed with the board's records custodian or assistant records custodian; and
(2) details the nature of the charge as required by this subtitle or other applicable law.
Id. Aleman argued that the formal complaint filed with the Board was not "in the form of a written affidavit" and that this failing constituted a jurisdictional defect requiring dismissal. After considering the motion and the Board's response, the ALJ denied Aleman's motion to dismiss.
The contested-case hearing was held in December 2013. Testifying at the hearing were Geraldine R. Harris, State Registrar with the Texas Department of State Health Services; Victor Farinelli, the electronic registration group manager at the Texas Department of State Health Services Vital Statistics Unit; and Aleman. After the hearing, the ALJ issued a proposal for decision setting forth its findings of fact and conclusions of law, including that Aleman violated Texas Health and Safety Code section 193.005 and that the violation constituted "unprofessional or dishonorable conduct" prohibited by Texas Occupations Code section 164.052(a)(5). The ALJ also concluded that Aleman was not entitled to the attorneys' fees he requested as sanctions pursuant to either chapter 10 of the Texas Civil Practice and Remedies Code or rule 13 of the Texas Rules of Civil Procedure. See Tex. Civ. Prac. & Rem. Code § 10.001 -.006 (sanctions for frivolous pleadings and motions); Tex. R. Civ. P. 13 (sanctions for filing pleadings or motions that are groundless and brought in bad faith or groundless and brought for purpose of harassment).
The Board adopted the ALJ's findings of fact and conclusions of law in their entirety. The Board ordered Aleman to (1) take and pass the Medical Jurisprudence Exam with a score of 75 or above; (2) pay an administrative penalty in the amount of $3,000; (3) enroll in and complete sixteen hours of continuing medical education; and (4) give a copy of the Board's order to all hospitals, nursing homes, treatment facilities, and other health care entities where he has privileges, has applied for privileges, applies for privileges in the future, or otherwise practices. By its terms, the order automatically terminates upon Aleman's submission of sufficient evidence to the Board's Compliance Division that he has successfully completed the requirements in the ordering paragraphs. After the Board denied Aleman's motion for rehearing, he filed suit for judicial review of the Board's order in Travis County District Court. See Tex. Occ. Code § 164.009 (person subject to disciplinary action by board may appeal to Travis County district court). The district court affirmed the Board's order with the exception of its inclusion of certain language regarding waiver of statutory notice periods in the event of Aleman's non-compliance with the Board's order. Aleman then perfected this appeal.
In eight issues, Aleman (1) argues that the Board did not have subject-matter jurisdiction over the disciplinary action due to its alleged failure to comply with mandatory and jurisdictional statutory requirements; (2) challenges the Board's finding that Aleman violated Texas Health and Safety Code section 193.005(h) and, as a consequence, committed an act prohibited by the Texas Medical Practice Act; (3) asserts that the administrative penalty and sanctions imposed were in excess of the Board's statutory authority and were arbitrary and capricious; (4) complains of alleged violations of his right to due process; and (5) maintains that the Board erred by denying his request for sanctions pursuant *31 to Texas Civil Practice and Remedies Code chapter 10 and rule 13 of the Texas Rules of Civil Procedure.
DISCUSSION
The Board's Authority to Conduct Disciplinary Proceeding
The Board is "the primary means of licensing, regulating, and disciplining physicians" in Texas. Id. § 151.003(2). The Board has "sole discretion" to issue medical licenses, id. § 155.002(a), and is empowered to oversee all aspects of medical licensing, including the initial examination and application for a license, the renewal and registration of a license, the investigation of complaints against a physician, and the suspension or revocation of a license, see id. §§ 151.001-168.202 (Subtitle B, "Physicians"). Thus, the Legislature has given the Board exclusive jurisdiction over disputes involving medical licenses. In his first issue, Aleman maintains that the Board did not have jurisdiction over this particular disciplinary proceeding because, in his view, the formal complaint did not comply with Texas Occupations Code section 164.005. Specifically, Aleman asserts that the formal complaint did not comply with the requirement that "[a] charge must be in the form of a written affidavit," a failing he argues constituted a jurisdictional defect that deprived the Board of the authority to conduct the disciplinary proceeding. See id. § 164.005(b).
We first consider whether the formal complaint was in compliance with Texas Occupations Code section 164.005(b). The Texas Government Code provides that, when used in a civil statute, the word "affidavit" means "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified by the officer under the seal of office." Tex. Gov't Code § 312.011(1). The formal complaint filed with the Board includes a statement of the factual allegations forming the basis of the disciplinary proceeding, is in writing, was signed by the staff attorney, and was sworn[5] to before a notary public by a staff attorney for the Board.[6] Thus, the formal complaint and the charges therein meet the statutory definition of an "affidavit."
Aleman argues that the formal complaint is nevertheless deficient because the staff attorney who signed the formal complaint did not have personal knowledge of the factual allegations included in it.[7] The statutory definition of an "affidavit" does not, however, include a requirement that the person making the statement have personal knowledge of the facts stated. Id. Thus, a written statement based on information and belief may qualify as an "affidavit" for purposes of section 164.005 provided it is signed and affirmed by the person making it and meets the other requirements included in the statutory definition. See id. Likewise, subsection 164.005 includes no requirement that a formal complaint filed with the Board be brought by a person with personal knowledge of the factual allegations forming the basis of the disciplinary proceeding. See Tex. Occ. Code § 164.005(b) ("Unless otherwise specified, a proceeding under this subtitle or other applicable law and a charge *32 against a license holder may be instituted by an authorized representative of the board.").
Aleman's authority for importing a personal knowledge requirement into the statutory definition of an affidavit consists of a case addressing the evidentiary value of an affidavit not based on personal knowledge in the summary-judgment context. See, e.g. , Kerlin v. Arias , 274 S.W.3d 666, 668 (Tex. 2008) ("To have probative value, an affiant 'must swear that the facts presented in the affidavit reflect his personal knowledge.' ") (citing In re E.I. DuPont de Nemours & Co. , 136 S.W.3d 218, 224 (Tex. 2004) ); see Tex. R. Civ. P. 166a(f) (affidavit supporting motion for summary judgment must be made on personal knowledge). Aleman also refers to the Texas Rules of Evidence, which require that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Tex. R. Evid. 602. The issue in this case, however, is not the evidentiary value of the formal complaint in this or any other legal proceeding. Rather, the issue here is whether the formal complaint met the statutory definition of "affidavit" contained in Texas Government Code section 312.011(1). Because it did, we overrule Aleman's first issue.[8]
Denial of Request to Take Judicial Notice
In his second issue, Aleman asserts that the ALJ erred by denying his motion to take judicial notice of what he characterizes as "jurisdictional facts." See Tex. R. Evid. 201 (court may judicially notice fact that is not subject to reasonable dispute because it is generally known within trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned). The purportedly "jurisdictional facts" Aleman asked the ALJ to take judicial notice of correspond to his argument that there was a jurisdictional defect in the formal complaint. For example, Aleman asked the ALJ to take judicial notice that "[t]he Texas Medical Board has not filed a complaint against [Aleman] that is in the form of a written affidavit" and that "the complaint filed by the Texas Medical Board against [Aleman] on May 7, 2013 was not a written statement made by a credible person under oath."[9] According to Aleman, the denial of this request was harmful because, had the ALJ taken judicial notice, "it would have been obvious" to him that "there was a lack of jurisdiction." Even assuming the "facts" Aleman listed in his brief could properly be the subject of judicial notice under Rule 201, they do not demonstrate a lack of subject-matter jurisdiction over the disciplinary proceeding. As set forth above, the formal complaint filed with the Texas Medical Board complied with the requirements of section 164.005 of the Texas Occupations Code. We overrule Aleman's second issue.
*33 Substantial Evidence Review of Board's Findings and Conclusions
Aleman's third and fourth appellate issues challenge the Board's conclusion that he committed an act prohibited by section 164.052 of the Texas Medical Practice Act by committing "unprofessional or dishonorable conduct that is likely to deceive or defraud the public." See Tex. Occ. Code § 164.052(a)(5). Section 2001.174 of the Texas Government Code provides the standard for judicial review of the Board's order. See Tex. Gov't Code 2001.174. Under this standard, we may not, with respect to questions committed to its discretion, substitute our judgment on the weight of the evidence for that of the agency. Id. We must, however, reverse an order if it prejudices substantial rights because its findings, inferences, conclusions, or decisions (1) violate a constitutional or statutory provision; (2) exceed statutory authority; (3) were made through unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (6) are arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. Id. An agency order is presumed to be valid, and it is supported by substantial evidence if the evidence in its entirety is sufficient to allow reasonable minds to have reached the conclusion the agency must have reached to justify the disputed action. Texas State Bd. of Dental Exam'rs v. Sizemore , 759 S.W.2d 114, 116 (Tex. 1988). The evidence in the record may preponderate against the agency's decision yet still provide a reasonable basis for the decision and thereby meet the substantial-evidence standard. Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc. , 665 S.W.2d 446, 452 (Tex. 1984). The party challenging the order has the burden of demonstrating a lack of substantial evidence. CenterPoint Energy Entex v. Railroad Comm'n , 213 S.W.3d 364, 369 (Tex. App.-Austin 2006, no pet.) (citing City of El Paso v. Public Util. Comm'n , 883 S.W.2d 179, 185 (Tex. 1994) ).
Aleman argues that there was no evidence presented at the hearing of any conduct by him that was unprofessional or dishonorable and likely to deceive or defraud the public. See Tex. Occ. Code § 164.052(a)(5). The evidence presented at the contested-case hearing established that Aleman did not electronically submit the medical certification for J.S.'s death certificate as required by Texas Health and Safety Code section 193.005(h). There was evidence that Aleman did not register for the TEDR system until August 16, 2011, almost a month after he provided the medical certification for J.S.'s death certificate by signing a paper copy. Aleman himself testified that he signed J.S.'s death certificate with a pen and did not submit the medical certification electronically. Thus, the record includes substantial evidence that Aleman did not comply with Texas Health and Safety Code section 193.005(h). Aleman argues, however, that there was no expert testimony that such conduct "involved any unprofessional or dishonorable conduct that was likely to deceive or defraud the public." Aleman's argument ignores the fact that the Texas Medical Practice Act itself defines such conduct to include committing "an act that violates any state or federal law if the act is connected with the physician's practice of medicine." See id. § 164.053(a)(1). Thus, no expert testimony was required to establish that Aleman's violation of the Texas Health and Safety Code constituted conduct prohibited by section 165.052(a) of the *34 Texas Medical Practice Act.[10]
Aleman maintains that any failure to comply with Texas Health and Safety Code section 193.005(h) would not fall within the scope of Texas Medial Practice Act section 164.053(a)(1)'s definition of "unprofessional and dishonorable conduct likely to deceive or defraud the public" because such violation was not "connected with the physician's practice of medicine." See id. (unprofessional and dishonorable conduct likely to deceive or defraud the public includes committing act that violates state or federal law if act is connected with physician's practice of medicine ). The ALJ expressly found that Aleman's act of providing the medical certification for J.S.'s death certificate was connected with his practice of medicine, and the Board adopted this finding. The evidence is undisputed that Aleman was the "certifying physician" for the death certificate.
Aleman argues, however, that a physician who signs a document is not "practicing medicine," and consequently his failure to provide the medical certification electronically cannot serve as the basis for disciplinary action by the Board. Aleman points out that under certain circumstances a justice of the peace may certify the cause of death on a death certificate and no one would argue that by doing so the justice of peace was "practicing medicine." According to Aleman, a physician who provides the medical certification on a death certificate is not "practicing medicine." One of the problems with Aleman's argument is that it is based on a flawed premise; i.e., that the conduct that violates a state law must constitute "practicing medicine." The plain language of the statute, however, does not require that the physician be engaged in his "practice of medicine," but only that the act that violated state law be in connection with his practice of medicine. See id. Just as a justice of the peace who certifies the cause of death on a death certificate in circumstances under which he is authorized to do so acts in connection with his office, so does a physician providing a medical certification act in connection with his medical practice. There was evidence at the contested-case hearing that Aleman was J.S.'s attending physician. It is precisely because Aleman is licensed to practice medicine and was involved in J.S.'s care that he was the person who provided the medical certification on the death certificate. See Tex. Health & Safety Code § 193.005 (person required to file death certificate shall obtain required medical certification from attending physician). The evidence was not that Aleman, who happens to be a physician, signed some unidentified document. Rather, the evidence was that Aleman acted as the certifying physician who signed the medical certification for the death certificate of one of his patients. Substantial evidence supports the Board's finding that Aleman's failure to submit the medical certification electronically was in connection with his practice of medicine.
Finally, Aleman contends that the ALJ should have made a finding that it was impossible for him to comply with the electronic certification requirement in Texas Health and Safety Code section 195.005(h) and, consequently, that his failure to do so could not serve as the basis for the Board's conclusion that he engaged *35 in conduct prohibited by the Texas Medical Practice Act. According to Aleman, J.S.'s death certificate, which had been initiated in the TEDR system and signed electronically by the funeral home, was "dropped to paper" on July 27, 2011 and he signed it on July 29, 2011. There was evidence at the contested-case hearing that once the death certificate "dropped to paper" it could no longer be signed electronically. Aleman asserts that there was no evidence that the certificate "dropped to paper" because of anything he did and that after that happened it was impossible for him to provide an electronic certification. Harris testified, and Aleman does not dispute, that the term "dropped to paper" refers to a death certificate that is electronically signed by one party (a funeral director or a physician) but cannot electronically be signed by the other because, for example, the other certifying party has not registered with the TEDR. Harris testified that J.S.'s electronic death certificate "dropped to paper" because the funeral director "couldn't get a medical certifier to get their end of it."[11] Thus, the impediment to Aleman's submitting the medical certification electronically was of his own making-his failure to register with the TEDR until August 2011. The ALJ was not required to find that Aleman's own failure to register with the TEDR created a legal impossibility that excused his failure to comply with Texas Health and Safety Code section 193.005.
The Board's conclusion that Aleman engaged in conduct prohibited by section 164.052 of the Texas Medical Practice Act is supported by substantial evidence and is not otherwise affected by any error of law. We overrule Aleman's third and fourth appellate issues.
Challenge to Disciplinary Sanction Imposed
The Board assessed an administrative penalty of $3,000 and ordered Aleman to take and pass the Medical Jurisprudence Exam with a score of 75 or above and to complete sixteen hours of continuing medical education in the topics of ethics and risk management. In his fifth issue, Aleman asserts that this assessment was arbitrary and capricious and in excess of the Board's authority. Aleman cites to Board Rule 190.14, a rule that provides guidelines for assessing sanctions for violations of the Texas Medical Practice Act. See 22 Tex. Admin. Code § 190.14 (Tex. Med. Bd., Disciplinary Sanctions Guidelines) ("These disciplinary sanctions guidelines are designed to provide guidance in assessing sanctions for violations of the Medical Practice Act."). For failure to sign a death certificate electronically, rule 190.14 provides a low sanction of "Remedial Plan; 4 hours of ethics/risk management and $500 administration fee" and a high sanction of "Agreed Order: CME-8 hours of risk management, 4-8 hours medical ethics; $2,000 admin penalty; JP exam." Id. § 190.14(9). Aleman complains that although the Board specifically found that there were no aggravating factors present, its sanction exceeds the "high" sanction set forth in rule 190.14, making it arbitrary and capricious and in excess of the Board's authority. It is apparent from the chart contained in paragraph 9 of rule 190.14, however, that the range of sanctions for failure to electronically sign a death certificate set forth in that paragraph applies when sanctions are imposed after resolution by agreement, resulting in either a "remedial plan" or an "agreed order." See id. § 187.19(a), (b) (providing that if Board *36 representative determines that licensee violated Texas Medical Practice Act, representative may recommend terms and conditions for informal resolution and shall reduce recommendation to writing in either "agreed order" or "remedial plan"), (c) (licensee may accept proposed settlement by signing and returning "agreed order" or "remedial plan;" if licensee rejects or fails to accept proposed agreement, board staff may proceed with filing of complaint at SOAH). Aleman did not accept an agreed order and proceeded to a contested-case hearing at SOAH. Consequently, paragraph 9 of rule 190.14, the part of the Board's rule setting forth guidelines for sanctions imposed in a "remedial plan" or "agreed order" put in place as part of a resolution by agreement, was not implicated in this disciplinary proceeding.
Board rule 190.14(4) provides that "the maximum sanction in all cases is revocation of the licensee's license, which may be accompanied by an administrative penalty of up to $5,000 per violation." Id. § 190.14(4). The Board's sanction in the present case was well below that maximum sanction and, in fact, not significantly more severe than what its rules recommend as a sanction had Aleman acknowledged that his failure to electronically sign the death certificate constituted a violation of the Texas Medical Practice Act and accepted an agreed order.[12] Aleman has not demonstrated that the Board's disciplinary action was either in excess of its statutory authority or arbitrary or capricious. We overrule Aleman's fifth issue.
Failure to Award Sanctions for Filing Frivolous Pleadings
In his sixth issue, Aleman contends that the Board erred by failing to award Aleman attorneys' fees as sanctions pursuant to rule 13 of the Texas Rules of Civil Procedure or section 10.001 of the Texas Civil Practice and Remedies Code. Rule 13 authorizes a trial court to impose certain sanctions against an attorney, a represented party, or both, who filed a pleading that is both groundless and either brought in bad faith or for purposes of harassment. Tex. R. Civ. P. 13 ; GTE Commc'ns Sys. Corp. v. Tanner , 856 S.W.2d 725, 731 (Tex. 1993) (orig. proceeding). Courts presume that pleadings are filed in good faith. Id. Aleman does not identify any evidence before the ALJ or the Board to support a finding that the Board's staff filed the formal complaint or any related pleadings in bad faith or for purposes of harassment. In his brief, Aleman simply states that "[t]here is no question but that certain allegations made by Board Staff were frivolous and brought in bad faith or for an improper purpose." Counsel's argument is not evidence, and Aleman presented neither the ALJ nor the Board with any evidence that could support an award of sanctions under rule 13.
Texas Civil Practice and Remedies Code section 10.002 authorizes a court to impose a sanction for filing a pleading that includes allegations or factual contentions that have, or are likely to have after a reasonable opportunity for further investigation or discovery, no evidentiary support. Tex. Civ. Prac. & Rem. Code § 10.002. Aleman argues that certain allegations *37 in the formal complaint lacked evidentiary support and that the ALJ or the Board erred in refusing his request for sanctions. Specifically, Aleman points to the allegations that he violated Texas Health and Safety Code section 193.004(2)[13] and that the case warranted more severe or restrictive disciplinary action because of the presence of aggravating factors including Aleman's intentional, premeditated, knowing, or grossly negligent acts.[14] Aleman essentially sought sanctions for his disagreement with certain legal and factual assertions made by the Board's staff in the formal complaint filed at the outset of the contested-case proceeding. A trial court's ruling on a request for sanctions is reviewed under an abuse-of-discretion standard. See Mattox v. Grimes Cty. Comm'rs Court , 305 S.W.3d 375, 386 (Tex. App.-Houston [14th Dist.] 2010, pet. denied). Based on the record before us, we cannot say that either the ALJ or the Board abused its discretion by declining to award sanctions based on the inclusion of these allegations in the formal complaint filed with the Board. See id.
Due Process
In his seventh and eighth issues, Aleman asserts that he was deprived of his due process rights because (1) he was prohibited from "deposing or calling his accuser" at trial and (2) the Board's order requires that he "cooperate with the Board staff, including attorneys, investigators, compliance officers, consultants, and other employees or agents of the Board in any way involved in investigation, review, or monitoring associated with [Aleman's] compliance" with the order. We first consider Aleman's complaint that he was not permitted to depose or call as a witness at trial the person he identifies as his "accuser," the Board's staff attorney who filed the formal complaint. Aleman's use of the term "accuser" suggests that he is referring to the Confrontation Clause. See U.S. Const., amend. VI. The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Id. The underlying proceeding was a disciplinary proceeding before a licensing agency, not a criminal prosecution. The Board's staff attorney was not a "witness against him." The Confrontation Clause has no application in this proceeding.
Aleman also argues on appeal that the Board's order that he cooperate with Board staff violates some unspecified constitutional rights. This argument is inadequately briefed and is therefore waived. See Tex. R. App. P. 38.1(i) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record). Aleman also asserts that because he was ordered to cooperate "even while this appeal is ongoing" he is forced to "waive the attorney-client privilege and discuss this case, conversations with his attorney, etc." or risk disciplinary action. The Board order does not require Aleman to waive the attorney-client privilege, but simply to cooperate with Board staff who are involved with investigating, reviewing, or monitoring his compliance with the Board's order. Aleman does not explain how cooperation with this process requires him to waive any attorney-client privilege. We overrule Aleman's seventh and eighth issues.
*38 CONCLUSION
Having overruled each of Aleman's eight issues in this appeal, we affirm the trial court's judgment.

The facts recited herein are derived from the evidence presented at a contested-case hearing held before an Administrative Law Judge (ALJ) at the State Office of Administrative Hearings (SOAH) and, unless otherwise indicated, are undisputed.

When the decedent dies of natural causes with medical attendance, the medical certification portion of the death certificate must be completed by the attending physician or, if that person is unavailable and approves, by an associate physician, the chief medical officer of the institution where the death occurred, or the physician who performed an autopsy of the decedent, provided these physicians have access to the medical history of the case. Tex. Health & Safety Code § 193.005(b).

The State Registrar is the custodian of vital records, including death certificates, in Texas.

Aleman did not submit an application for enrollment in the TEDR until August 16, 2011. His enrollment in the TEDR system was approved on August 19, 2011.

"Sworn" includes affirmed. Tex. Gov't Code § 312.011(16).

A notary public is authorized to administer an oath made in Texas. Id. § 602.002(5).

The formal complaint states: "Board Staff has received information and, based on that information, believes that the Respondent has violated the Act." It further states that the factual allegations contained in the formal complaint are "[b]ased on such information and belief."

Having concluded that the formal complaint complied with section 164.005, we need not address whether filing a charge that is not in the form of a written affidavit constitutes a jurisdictional defect that deprives the Board of subject-matter jurisdiction over a disciplinary proceeding. We express no opinion on that issue.

Most of the "jurisdictional facts" Aleman asked the ALJ to take judicial notice of are not "facts" at all but instead are either statements of the law ("section 164.005 of the Texas Occupations Code sets out the definition of a 'formal complaint' ") or statements of Aleman's own application of the law to the facts ("The complaint was not in the form of a written affidavit."). Other of the "jurisdictional facts," such as that "[t]he complaint against [Aleman] was filed by the Texas Medical Board on May 7, 2013," are undisputed and set forth in the ALJ's proposal for decision.

Aleman also argues that the "state or federal law" referred to in section 164.053(a)(1) is limited to criminal laws, not civil statutes such as Texas Health and Safety Code section 193.005(h). The plain language of section 164.053(a)(1) includes no such limitation, and we will not read into a statute a limitation that is not there on its face. See Machete's Chop Shop, Inc. v. Texas Film Comm'n , 483 S.W.3d 272, 280 (Tex. App.-Austin 2016, no pet.).

Although counsel for Aleman objected to this testimony as speculative, the ALJ permitted Harris to continue testifying, did not rule on the objection, and counsel for Aleman did not move to strike Harris's testimony.

The Board argues that the sanctions guidelines in rule 190.14 are just that-guidelines-not mandates or requirements removing the Board's exclusive discretion to impose penalties on licensees who violate the Texas Medical Practice Act. Because the Board's sanctions in this case were not inconsistent with the guidelines set forth in rule 190.14, we need not address, and express no opinion about, whether or to what extent rule 190.14 constrains the Board's authority to impose sanctions on licensees for violations of the Texas Medical Practice Act.

The ALJ and the Board ultimately concluded that Aleman did not violate this subsection of the Texas Health and Safety Code.

The ALJ and the Board ultimately concluded that these factors were not present.