# IN THE SUPREME COURT OF TEXAS

No. 17-0385

RUBEN ALEMAN, M.D., PETITIONER,

v.

TEXAS MEDICAL BOARD, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

JUSTICE BOYD, dissenting.

In 2007, the legislature passed a statute requiring medical professionals to certify their patients' death certificates electronically instead of on paper. *See* TEX. HEALTH & SAFETY CODE § 193.005(h). To allow physicians ample time to register for and transition to this new system, the Medical Board declined to enforce the requirement for four-and-a-half years. The Board sent mass mailings notifying physicians of the new requirement and then notified them again when the grace period expired. Despite the statute and the notices, Dr. Ruben Aleman never registered to use the electronic-certification system during the extended grace period. One month after the grace period ended, he certified a patient's death certificate on paper. In response, the Board initiated a disciplinary action against Dr. Aleman for violating the law in connection with the practice of medicine.

It was a slam-dunk case. Dr. Aleman does not dispute that he certified the death certificate on paper rather than electronically. Predictably, the administrative law judge found that Dr.

Aleman's failure to electronically certify the death certificate was a prohibited practice for which he was subject to discipline. The Board, the trial court, and the court of appeals unanimously agreed. *Aleman v. Tex. Med. Bd.*, 565 S.W.3d 26, 28 (Tex. App.—Austin 2017).

But this Court does not. Purporting to "consider the context and framework of the entire statute" and "construe it as a whole" to "discern legislative intent," *ante* at __ (quoting *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017)), the Court holds that the Board may discipline a doctor who commits an illegal act connected with the practice of medicine "only if the act is connected with the practice of medicine in a manner that makes it likely to deceive or defraud the public." *Ante* at __.

Instead of "construing" the statute to divine some fictional "legislative intent,"[1] I would just apply the statute's plain and unambiguous language. The statute says the Board may discipline a doctor who "commits an act prohibited *under Section 164.052*." TEX. OCC. CODE § 164.051(a)(1) (emphasis added). Under section 164.052, a physician commits a prohibited act if the person "commits unprofessional or dishonorable conduct that is likely to deceive or defraud the public, *as provided by Section 164.053*." *Id.* § 164.052(a)(5) (emphasis added). And section 164.053 "provides" that, for "*purposes of Section 164.052(a)(5)*, unprofessional or dishonorable conduct

---

[1] *See, e.g.*, *Lawson v. FMR LLC*, 571 U.S. 429, 460 (2014) (Scalia, J., concurring) ("Since congressional 'intent' apart from enacted text is fiction to begin with, courts understandably allow themselves a good deal of poetic license in defining it."); *Bank One Chicago, N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 279 (1996) (Scalia, J., concurring) ("The law *is* what the law *says,* and we should content ourselves with reading it rather than psychoanalyzing those who enacted it."); *Sherman v. United States*, 356 U.S. 369, 381 (1958) (Frankfurter, J., concurring) (referring to "wholly fictitious congressional intent"); *Tex. Dep't of Pub. Safety v. LaFleur*, 32 S.W.3d 911, 915 n.7 (Tex. App.—Texarkana 2000, no pet.) ("Legislative intent is, in a sense, a legal fiction because it requires the courts to ascertain the intent of all of the voting members of the legislative body. There is no way to know what all members of the Legislature believed any given bill might mean."); Frank H. Easterbrook, *Text, History, and Structure in Statutory Interpretation,* 17 HARV. J.L. & PUB. POL'Y 61, 68 (1994) ("Intent is elusive for a natural person, fictive for a collective body.").

likely to deceive or defraud the public *includes* conduct in which a physician . . . commits an act that violates any state or federal law if the act is connected with the physician's practice of medicine." *Id.* § 164.053(a)(1) (emphases added).

At the risk of proving F. Scott Fitzgerald's point,[2] I (at least keeping good company with the administrative law judge, the Board, the trial court, and the unanimous court of appeals) find all this pretty simple:

- the Board can discipline a doctor who commits unprofessional or dishonorable conduct that is likely to deceive or defraud the public;
- such conduct "includes" an illegal act connected with the practice of medicine; and
- Dr. Aleman committed an illegal act connected with the practice of medicine; so
- the Board can discipline Dr. Aleman.

When the statute expressly classifies particular conduct as "unprofessional or dishonorable conduct likely to deceive or defraud the public," the Court's disagreement with that classification is irrelevant. As we have said time and again, "when a statute provides a definition for or uses a word or phrase in a particular manner, then courts *must* apply that definition or manner of use when interpreting the statute." *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015) (emphasis added).[3]

---

[2] F. SCOTT FITZGERALD, THE GREAT GATSBY 79 (Wordsworth Editions Ltd. 1993) ("There is no confusion like the confusion of a simple mind.").

[3] *See also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("[W]e must adhere to statutory definitions.") (citing *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage.")); *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) ("Courts must adhere to legislative definitions of terms when they are supplied.") (citing TEX. GOV'T CODE § 311.001(b)); *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 893 (Tex. 2017) ("We also typically give statutory terms their ordinary or common meaning unless . . . a supplied definition indicates that a different meaning was intended.") (citing *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 765 (Tex. 2014) ("We rely on the plain meaning of the text as expressing legislative intent

Purporting to construe the statute "as a whole" instead of "favoring microscopic examination of isolated words," the Court concludes that the statute simply cannot mean what it expressly says. *Ante* at \_\_. Specifically, the Court concludes that conduct that qualifies as conduct "likely to deceive or defraud the public" does not in fact "include" the conduct the statute says it includes, but instead includes such conduct only if it is in fact likely to deceive or defraud the public. *Ante* at \_\_. But it "is very rare that a defined meaning can be replaced with another permissible meaning of the word on the basis of other textual indications; the definition is virtually conclusive." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 228 (2012) [hereinafter READING LAW]. And we need not microscopically examine any isolated words to conclude that conduct for which the Board may discipline a doctor "includes" illegal conduct connected with the practice of medicine. Because the statute expressly says it does, the Court's contrary conclusion is simply "disloyal to [the] enacted text." *Youngkin*, 546 S.W.3d at 681.

As additional support for its holding, the Court asserts that the "finite list of acts" under section 164.053(a) narrows the scope of conduct that qualifies as "unprofessional or dishonorable

---

unless a different meaning is supplied by legislative definition . . . .")); *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015) ("[W]e initially limit our statutory review to the plain meaning of the text as the sole expression of legislative intent . . . unless the Legislature has supplied a different meaning by definition . . . .") (internal citations omitted); *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) ("We construe a statute's words according to their plain and common meaning unless they are statutorily defined otherwise . . . ."); *In re Ford Motor Co.*, 442 S.W.3d 265, 271 (Tex. 2014) (orig. proceeding) ("We presume that a definition of a common word accords with and does not conflict with the ordinary meaning unless the language clearly indicates otherwise."); *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 636 (Tex. 2013) ("If a term is expressly defined by statute we must follow that definition.") (citing TEX. GOV'T CODE § 311.001(b)); *City of Waco v. Kelley*, 309 S.W.3d 536, 542 (Tex. 2010) ("If the Legislature provides definitions for words it uses in statutes, then we use those definitions in our task."); *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) ("[I]f a statute defines a term, a court is bound to construe that term by its statutory definition only."); *Tijerina v. City of Tyler*, 846 S.W.2d 825, 827 (Tex. 1992) ("Statutory definitions must be given effect; ordinary meanings should be applied *only* to undefined terms.") (emphasis added).

conduct likely to deceive or defraud the public" under section 164.052(a)(5). *Ante* at __. It reasons that the Board's reading of section 164.053(a)(1) "broadens that scope" and thus "ignores the Legislature's choice to categorize the conduct in the first instance." *Ante* at __. This reasoning fails for two independent reasons.

First, it misapplies the *noscitur a sociis* canon on which it relies *sub silentio*. This canon "directs that similar terms be interpreted in a similar manner." *TGS-NOPEC*, 340 S.W.3d at 441. More specifically, when words "are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." READING LAW at 195. Specific items within a list may limit the meaning of a more general term within the same list "to a subset of all the things or actions that [the more general term] covers— but only according to its ordinary meaning." *Id.* at 196.

The Court concludes that the statute's reference to illegal acts connected with the practice of medicine must refer only to such acts that are connected with the practice of medicine "in a manner that makes [them] likely" deceptive or fraudulent, because all the other items in the list fit that description. *Ante* at __. To begin with, that characterization simply isn't true: failing to adequately supervise a subordinate is not necessarily likely to deceive or defraud the public, *see* TEX. OCC. CODE § 164.053(a)(8), nor is writing a prescription for a known narcotic abuser or prescribing a nontherapeutic treatment, *see id.* §§ 164.053(a)(3), (5). Under the Court's construction, the Board could discipline a doctor for engaging in *any* of the listed conduct *only* if the Board demonstrates that the doctor's particular actions were likely to deceive or defraud the public. The statute, however, imposes no such requirement.

5

But beyond that, the Court misapplies the *noscitur a sociis* canon by focusing on the narrowest possible commonality among the listed items. When the canon applies, the "common quality" among the items listed "should be its *most general* quality—the *least* common denominator, so to speak—relevant to the context." READING LAW at 196 (emphases added). To use the Court's example, *see ante* at __, the canon might justify construing the statute's reference to illegal acts "connected with the practice of medicine" to *not* include a doctor's speeding on the way to the hospital, because the types of acts listed share the "general quality" of improper acts performed *as a physician*, not *as a driver*. But whether that's true or not, no one disputes that Dr. Aleman's failure to certify the death certificate electronically was improper and connected with the practice of medicine and, in that sense, it fits squarely within the "general quality" the other listed items share.

Second, and more concerning, the Court's reasoning ignores—and effectively deletes—the statute's unambiguous language. According to the Court, the statute's reference to illegal acts connected with the practice of medicine must refer only to such acts that are "connected with the practice of medicine in a manner that makes [them] likely to deceive or defraud the public" because, "otherwise, categorizing the conduct at all serves no purpose." *Ante* at __. To the contrary, by "categorizing" actionable conduct as all unprofessional or dishonorable acts likely to deceive or defraud the public, and then defining *that category* to include a *non-exclusive* list of specific types of conduct, the statute confirms that the category includes both the listed conduct and all other unspecified conduct that fits within the broad category. In other words, by stating that the generally described conduct "includes" the listed conduct, the statute does not create a "finite list of acts" at all. *See* TEX. GOV'T CODE § 311.005(13) ("'Includes' and 'including' are terms of

6

enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.").

That one listed item does not seem *to us* to fit neatly within the general category's description does not grant us license to remove or revise that item. We have no authority "to rewrite the statute so that it covers only what *we think* is necessary to achieve what *we think* [the legislature] really intended." *Lewis v. City of Chicago*, 560 U.S. 205, 215 (2010) (emphases added); *see also Badaracco v. Comm'r of Internal Revenue*, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."). The Court does not think that all illegal conduct connected with the practice of medicine constitutes "unprofessional or dishonorable conduct likely to deceive or defraud the public," so it rewrites the statute to include only those illegal acts that it thinks fit that description. But it ignores the statute's express statement that the general category "includes" illegal conduct connected with the practice of medicine, whether we think it should or not.

And there's more. If, as the Court concludes, the statute allows the Board to discipline doctors only for conduct that is "likely to deceive or defraud the public," there'd be no reason for the list of "included" conduct at all. Under the Court's approach, every act that clearly fits that description is actionable, every act that does not clearly fit that description is not actionable, and the list of acts that the statute says are "included" within the description is simply meaningless. But by providing the list of "included" conduct, the statute provides that all such "included" conduct is actionable even if we think it doesn't clearly fit the description.

Contrary to the Court's reasoning, the correct approach is to recognize that, by describing a general category and then listing specific conduct "included" within that category, the statute

7

makes "doubly sure that the broad (and intended-to-be-broad) general term is taken to include the specifics." READING LAW at 204 (noting that some statutes, like the one at issue here, "provide this belt-and-suspenders function by introducing the specifics with a term such as *including* or even *including without limitation*"). The statute expressly provides that the category of prohibited conduct for which a physician may be disciplined—however that category may be described— "includes" illegal conduct connected with the practice of medicine. Because Dr. Aleman's failure to comply with the electronic-certification statute amounts to such conduct, the statute authorizes the Board to discipline him.

Because the statute expressly grants the Board authority to discipline Dr. Aleman for violating the electronic-certification statute, I respectfully dissent.[4] Like the unanimous court of appeals, the trial court, the Board, and the administrative law judge, I would hold that the Board acted within its authority, Dr. Aleman cannot rely on an impossibility defense, and the Board did not abuse its discretion. I would affirm.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: May 24, 2019

---

[4] Dr. Aleman alternatively argues that it was "impossible" for him to electronically certify the death certificate, given that he had not yet registered to use the system, and that the Board abused its discretion by imposing arbitrary and capricious penalties. For the reasons the court of appeals explained, I would reject both arguments. Dr. Aleman cannot rely on an impossibility "of his own making—his failure to register with the [electronic system] until August 2011." 565 S.W.3d at 35. And the Board's penalties fell well below the maximum its rules allowed for contested cases. *See* 22 TEX. ADMIN. CODE § 190.14(4) ("The maximum sanction in all cases is revocation of the licensee's license, which may be accompanied by an administrative penalty of up to $5,000 per violation."). I do not disagree with the Court's holding that the Board's complaint against Dr. Aleman met all statutory requirements and that Dr. Aleman was not entitled to attorney's fees in the administrative proceedings. *See ante* at __, __.