# IN THE SUPREME COURT OF TEXAS

No. 17-0385

RUBEN ALEMAN, M.D., PETITIONER,

v.

TEXAS MEDICAL BOARD, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

**Argued January 22, 2019**

JUSTICE LEHRMANN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, and JUSTICE DEVINE joined, and in which JUSTICE BUSBY joined except as to footnote 9.

JUSTICE BLACKLOCK filed a concurring opinion, in which JUSTICE BROWN joined.

JUSTICE BOYD filed a dissenting opinion.

In this administrative appeal, we review the Texas Medical Board's order imposing disciplinary sanctions under the Medical Practice Act against a physician for violating a state law that requires medical certifications for death certificates to be completed electronically. On the physician's petition for judicial review, the trial court affirmed the Board's order, and the court of appeals likewise affirmed. The physician argues that the Board lacked jurisdiction over the proceedings, that the Medical Practice Act does not authorize disciplinary action for the conduct at issue, that compliance with the electronic certification requirement was impossible, that the

Board's sanction was so severe as to be an abuse of discretion, and that the physician is entitled to recover attorney's fees. We agree with the physician that disciplinary action was not authorized and thus reverse the court of appeals' judgment in part.

## I. Background

### A. Death Certificates: Statutory Framework

The Texas Health and Safety Code places the responsibility of filing a death certificate on the "person in charge of interment or in charge of removal of a body from a registration district for disposition." TEX. HEALTH & SAFETY CODE § 193.002. With certain inapplicable exceptions, that person must "obtain the required medical certification from the decedent's attending physician . . . if the death occurred under the care of the [physician] in connection with the treatment of the condition or disease process that contributed to the death." *Id.* § 193.005(a).[1] Generally, the Act requires that the medical certification be completed no later than five days after the physician receives the death certificate, *id.* § 193.005(b),[2] and that the certificate be filed with the appropriate local registrar no later than ten days after the death occurs, *id.* § 193.003(a).[3]

---

[1] The Act allows other designated physicians to complete the medical certification if the attending physician is unavailable and other requirements are met. TEX. HEALTH & SAFETY CODE § 193.005(c). And in 2017, the Legislature amended the Act to allow a physician assistant or advanced practice registered nurse to complete the certification for certain patients receiving hospice services and palliative care. Act of May 30, 2017, 85th Leg., R.S., ch. 509, § 1, 2017 Tex. Gen. Laws 1343, 1343–44 (codified at TEX. HEALTH & SAFETY CODE § 193.005(a-1)).

[2] The Act requires the person completing the medical certification to notify the funeral director of the reason for delay if the certification cannot be completed in a timely manner. TEX. HEALTH & SAFETY CODE § 193.005(g).

[3] If the person required to file the certificate is licensed by a state agency, the Act prohibits the agency from taking "disciplinary action against the person for failure to timely file the certificate if the person supplies written documentation that the person has made a good faith effort to [timely] file . . . and the failure to [do so] results from circumstances beyond the person's control." *Id.* § 193.0041.

2

In 2007, the Legislature amended chapter 193, adding a provision that requires the person completing the medical certification to "submit the information and attest to its validity using an electronic process approved by the state registrar." Act of May 17, 2007, 80th Leg., R.S., ch. 302, § 2, 2007 Tex. Gen. Laws 577, 577 (codified at TEX. HEALTH & SAFETY CODE § 193.005(h)). During the time period at issue in this case, the approved electronic process for preparing and recording death certificates was the Texas Electronic Death Registration system (known as TEDR), administered by the Texas Department of State Health Services' Vital Statistics Unit.[4]

To use the TEDR system, a physician would submit an application to the Department and receive a password from the registrar. When the person required to file a death certificate (often a funeral director) prepared his portion of the certificate electronically and entered the medical certifier's information, the system automatically notified the certifier via email that certification was necessary. The certifying physician would then log into the system to complete the certification. If the certifier was not registered to use the system, the certificate could be "dropped to paper" by the funeral director, meaning it was removed from the system, and sent to the physician for completion on paper. In either event, the completed certificate was filed with the local registrar.

**B. Factual and Procedural Background**

J.S., a patient of Dr. Ruben Aleman's, died on July 16, 2011. The funeral director generated and signed J.S.'s death certificate electronically. However, Dr. Aleman was not

---

[4] According to the Department's website, a new registration system called Texas Electronic Vital Events Registrar (TxEVER) went live on January 1, 2019, replacing TEDR and the corresponding system for preparing and recording birth certificates. *See* https://dshs.texas.gov/vs/field/The-TxEVER-Project/.

registered with the TEDR system, so the certificate was dropped to paper and sent to him for manual certification. Dr. Aleman received and hand-certified the paper certificate on July 29. The certificate became "official" on August 8, when it was certified by the local registrar. On August 16, Dr. Aleman submitted an application to register with the TEDR system, and his application was approved and took effect three days later. After registering, Dr. Aleman attempted to certify J.S.'s death certificate electronically. However, the system would not allow him to do so once the certificate became official.

Almost two years later, on May 3, 2013, the Texas Medical Board filed a complaint with the State Office of Administrative Hearings (SOAH) seeking disciplinary action against Dr. Aleman.[5] The complaint, signed and sworn to by a Board staff attorney, alleged that "[r]ather than certifying the patient's death certificate through TEDR as required, [Dr. Aleman] required the mortuary to provide him with a paper death certificate," which he "ultimately signed." The complaint alleged that, in doing so, Dr. Aleman violated Health and Safety Code sections 193.002(4) (requiring death certificates to be filed electronically) and 193.005(h) (requiring death certificates to be medically certified electronically). The complaint further alleged that this conduct violated the Medical Practice Act, which authorizes disciplinary action against a licensed physician for "commit[ting] unprofessional or dishonorable conduct that is likely to deceive or defraud the public," including "an act that violates any state or federal law if the act is connected with the physician's practice of medicine." TEX. OCC. CODE §§ 164.052(a)(5), .053(a)(1). Finally, the complaint alleged the case involved aggravating

---

[5] After the electronic certification requirement went into effect in September 2007, the Board observed a grace period until June 1, 2011, refraining from taking disciplinary action against physicians who failed to comply with the requirement during that period. The events involving Dr. Aleman occurred shortly after the grace period expired.

4

factors—increased potential for harm to the public and an intentional, premeditated, knowing, or grossly negligent act—that should be taken into consideration in determining sanctions.

Dr. Aleman filed a motion to dismiss and plea to the jurisdiction, arguing that the Board lacked subject matter jurisdiction because the complaint did not comply with the Medical Practice Act's requirements. *See id.* § 164.005. The administrative law judge (ALJ) denied the motion. The ALJ also denied both parties' motions for summary disposition as well as Dr. Aleman's motion for sanctions. After a hearing, the ALJ issued a Proposal for Decision containing findings of fact and conclusions of law. The ALJ found that Dr. Aleman did not violate Health and Safety Code section 193.002(4), which applies only to persons required to *file* death certificates. However, the ALJ concluded that Dr. Aleman did violate section 193.005(h) by failing to complete the medical certification electronically and that his noncompliance "did not result from circumstances beyond his control." In turn, the ALJ found that, because the violation was related to Dr. Aleman's practice of medicine, he "by definition" violated the Medical Practice Act. The ALJ further found that no aggravating factors were present in the case. Finally, the ALJ concluded that Dr. Aleman was not entitled to, nor was SOAH authorized to award, attorney's fees.

The Board adopted the ALJ's findings and imposed sanctions. Specifically, the Board ordered Dr. Aleman to: take and pass the Board's Jurisprudence Examination within one year (in no more than three attempts); pay a $3,000 administrative penalty; complete sixteen hours of continuing medical education within one year, including eight hours of ethics and eight hours of risk management; and give a copy of the Board's order to "all hospitals, nursing homes,

5

treatment facilities, and other health care entities" where Dr. Aleman has privileges or otherwise practices.

On Dr. Aleman's petition for judicial review of the Board's order, the trial court affirmed the order in all relevant respects, and the court of appeals affirmed the trial court's judgment. 565 S.W.3d 26 (Tex. App.—Austin 2017). The court of appeals held in pertinent part: (1) the Board's complaint complied with all statutory requirements, *id.* at 31; (2) substantial evidence supported the Board's conclusion that Dr. Aleman violated the Medical Practice Act, *id.* at 35; (3) no legal impossibility excused Dr. Aleman's failure to comply because "the impediment to Aleman's submitting the medical certification electronically was of his own making—his failure to register with the TEDR until August 2011," *id.*; (4) the discipline imposed by the Board was neither in excess of its statutory authority nor arbitrary or capricious, *id.* at 36; and (5) the Board did not abuse its discretion in declining to award Dr. Aleman attorney's fees as sanctions for frivolous pleadings, *id.* at 37. We granted Dr. Aleman's petition for review.

## II. Discussion

### A. Sufficiency of Complaint

Texas Occupations Code section 164.005 prescribes the procedure for instituting formal administrative proceedings against a physician. Dr. Aleman asserts that the formal complaint against him did not comply with the section's requirements, depriving the Board of jurisdiction over this proceeding. The Board responds that the complaint was statutorily compliant and, alternatively, that any defects are not jurisdictional. *See City of DeSoto v. White*, 288 S.W.3d 389, 394 (Tex. 2009) (explaining that we presume statutory requirements are not jurisdictional

6

absent clear legislative intent to the contrary). We hold that the complaint met the statutory requirements and thus need not decide whether those requirements are jurisdictional.

Section 164.005 provides in pertinent part:

(a) In this section, "formal complaint" means a written statement made by a credible person under oath that is filed and presented by a board representative charging a person with having committed an act that, if proven, could affect the legal rights or privileges of a license holder or other person under the board's jurisdiction.

(b) Unless otherwise specified, a proceeding under this subtitle or other applicable law and a charge against a license holder may be instituted by an authorized representative of the board.

(c) A charge must be in the form of a written affidavit that:

(1) is filed with the board's records custodian or assistant records custodian; and

(2) details the nature of the charge as required by this subtitle or other applicable law.

. . . .

(f) A formal complaint must allege with reasonable certainty each specific act relied on by the board to constitute a violation of a specific statute or rule. The formal complaint must be specific enough to:

(1) enable a person of common understanding to know what is meant by the formal complaint; and

(2) give the person who is the subject of the formal complaint notice of each particular act alleged to be a violation of a specific statute or rule.

TEX. OCC. CODE § 164.005(a)–(c), (f). Dr. Aleman does not contend that the complaint provided insufficient detail or notice with respect to the particular acts underlying the alleged violations. Rather, he insists that the complaint was not "in the form of a written affidavit" or "made by a

7

credible person under oath" because the Board staff attorney who signed the complaint lacked personal knowledge of the events in question.

As the court of appeals noted, the Texas Government Code defines "affidavit" as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." TEX. GOV'T CODE § 312.011(1). The complaint at issue meets this definition: it is in writing, states facts, is signed by the party stating them, and is sworn and notarized. We apply this definition in construing civil statutes "unless a different meaning is apparent from the context of the statute in which the word appears." *Id.* §§ 312.001, .011. But no such different meaning— i.e., one adding a requirement that the complaint be signed by a person with personal knowledge—is apparent from the context of section 164.005.

To the contrary, section 164.005(b) provides that, "[u]nless otherwise specified, a proceeding under this subtitle or other applicable law and a charge against a license holder may be instituted by an authorized representative of the board." TEX. OCC. CODE § 164.005(b). This provision would make little sense if personal knowledge were required because board representatives typically will not have such knowledge of the facts underlying an alleged Medical Practice Act violation. Further, the statute contains no indication that a formal complaint is intended to have evidentiary value in the proceedings. By contrast, as the court of appeals recognized, affidavits must affirmatively be "made on personal knowledge" to constitute competent evidence in the summary judgment context. TEX. R. CIV. P. 166a(f). Section 164.005 contains no such express requirement, and we decline to imply one. Accordingly, we hold that the complaint against Dr. Aleman complied with the Medical Practice Act.

8

**B. Authorization for Disciplinary Action
Under the Medical Practice Act**

Dr. Aleman next argues that the Board erred in taking disciplinary action against him for failing to complete the medical certification for J.S.'s death certificate electronically. Under the Administrative Procedure Act, the Board's order may be reversed if its findings and conclusions are "not reasonably supported by substantial evidence" or are "arbitrary or capricious or characterized by abuse of discretion." TEX. GOV'T CODE § 2001.174(2)(E), (F). The Board's factual findings are reviewed under a substantial evidence standard, meaning they will be upheld if "more than a mere scintilla" of evidence supports them. *City of Dallas v. Stewart*, 361 S.W.3d 562, 566 (Tex. 2012) (internal quotation marks omitted). However, the issue here is not whether Dr. Aleman did or did not certify electronically—it is undisputed that he did not. Rather, the parties dispute whether the Medical Practice Act authorized disciplinary action for that conduct, presenting an issue of statutory interpretation.

Statutory interpretation involves questions of law that we consider de novo, even when reviewing agency decisions. *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017). We generally "rely on the plain meaning of a statute's words" to discern legislative intent. *Id.* In evaluating that language, we construe the words and phrases chosen by the Legislature in context rather than in isolation. *Id.* at 326. That is, "our objective is not to take definitions and mechanically tack them together," but to "consider the context and framework of the entire statute" and construe it as a whole. *Id.*

9

Under the Medical Practice Act, the Board has "the power to regulate the practice of medicine."[6] TEX. OCC. CODE § 152.001(a). As part of its authority to enforce the Act, the Board may take disciplinary action against physicians who engage in certain statutorily prohibited practices. *See id.* § 164.051(a). Among these prohibited practices, enumerated in section 164.052, is the commission of "unprofessional or dishonorable conduct that is likely to deceive or defraud the public, as provided by Section 164.053, or injure the public." *Id.* § 164.052(a)(5). In turn, section 164.053 provides a list of acts that, "[f]or purposes of Section 164.052(a)(5), [constitute] unprofessional or dishonorable conduct likely to deceive or defraud the public." *Id.* § 164.053(a). This list includes "an act that violates any state or federal law if the act is connected with the physician's practice of medicine." *Id.* § 164.053(a)(1).

The Board argues that a physician's certifying a death certificate using pen and paper rather than electronically is a violation of state law—specifically, Health and Safety Code section 193.005(h)—and is connected with the physician's practice of medicine. Thus, the Board concludes, such conduct is subject to disciplinary action. Dr. Aleman responds that, even if he technically violated the electronic certification requirement, section 164.053(a)(1) does not encompass this type of conduct, which does not "actually" qualify as unprofessional or dishonorable conduct that could "actually" deceive or defraud the public. For the reasons discussed below, we hold that the Medical Practice Act did not authorize the Board to take disciplinary action against Dr. Aleman.

---

[6] "Practicing medicine" is defined as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a [physician]." TEX. OCC. CODE § 151.002(13).

The Board is correct that, in light of the Health and Safety Code's electronic certification requirement, Dr. Aleman necessarily violated state law by certifying J.S.'s death certificate manually, regardless of his knowledge of the law's existence. But such conduct was subject to disciplinary action under the Act only if "connected with" the practice of medicine. The question thus arises: what kind of connection is required between the conduct at issue and the practice of medicine?

Typically, when applying statutes requiring a connection between two things, our analysis hinges on how direct that connection must be. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (analyzing whether communications were made "in connection with" a matter of public concern under the Texas Citizens Participation Act, and rejecting the court of appeals' determination that more than a "tangential relationship" is required to trigger the Act); *Collingsworth Gen. Hosp. v. Hunnicutt*, 988 S.W.2d 706, 709 (Tex. 1998) (examining whether a hospital employee who was fired for committing an assault while off duty had nevertheless been terminated for misconduct "connected with" her work, rendering her ineligible for unemployment benefits). However, in this case, the Medical Practice Act further delimits the scope of the required connection by grouping the conduct described in section 164.053(a)(1) with a list of behavior that is sanctionable as "unprofessional or dishonorable conduct that is likely to deceive or defraud the public." TEX. OCC. CODE §§ 164.052(a)(5), .053(a).

11

By classifying the prohibited conduct in this way,[7] the Legislature demonstrated its intent to authorize discipline for certain acts that fall within that category. Examining the list of qualifying conduct in its entirety furthers this conclusion:

(a) For purposes of Section 164.052(a)(5), unprofessional or dishonorable conduct likely to deceive or defraud the public includes conduct in which a physician:

(1) commits an act that violates any state or federal law if the act is connected with the physician's practice of medicine;

(2) fails to keep complete and accurate records of purchases and disposals of:

(A) drugs listed in Chapter 481, Health and Safety Code [controlled substances]; or

(B) controlled substances scheduled in the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. Section 801 et seq.);

(3) writes prescriptions for or dispenses to a person who:

(A) is known to be an abuser of narcotic drugs, controlled substances, or dangerous drugs; or

(B) the physician should have known was an abuser of narcotic drugs, controlled substances, or dangerous drugs;

(4) writes false or fictitious prescriptions for:

(A) dangerous drugs as defined by Chapter 483, Health and Safety Code [i.e., drugs that are unsafe for self-medication but are not included on the list of controlled substances]; or

(B) controlled substances scheduled in Chapter 481, Health and Safety Code, or the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. Section 801 et seq.);

---

[7] We disagree with the court of appeals and the dissent that the Act internally defines the term "unprofessional or dishonorable conduct likely to deceive or defraud the public." Rather, the Legislature has enumerated in section 164.053 a number of practices that are encompassed by that classification, including acts that violate state law and are connected with the physician's practice of medicine.

(5) prescribes or administers a drug or treatment that is nontherapeutic in nature or nontherapeutic in the manner the drug or treatment is administered or prescribed;

(6) prescribes, administers, or dispenses in a manner inconsistent with public health and welfare:

> (A) dangerous drugs as defined by Chapter 483, Health and Safety Code; or

> (B) controlled substances scheduled in Chapter 481, Health and Safety Code, or the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. Section 801 et seq.);

(7) violates Section 311.0025, Health and Safety Code [which prohibits billing for a treatment that the provider knows was not provided or was improper, unreasonable, or medically or clinically unnecessary];

(8) fails to supervise adequately the activities of those acting under the supervision of the physician; or

(9) delegates professional medical responsibility or acts to a person if the delegating physician knows or has reason to know that the person is not qualified by training, experience, or licensure to perform the responsibility or acts.

*Id.* § 164.053(a).

It is easy to see how the specific conduct described in subsections (a)(2) through (a)(9)—keeping inadequate records of controlled substances, prescribing drugs to those known to be drug abusers, writing false or fictitious prescriptions for certain drugs, prescribing or administering controlled substances and dangerous drugs in a manner inconsistent with public health and welfare, billing for unperformed or medically unnecessary treatments, failing to adequately supervise, and delegating medical responsibilities to unqualified persons—falls under the

13

umbrella of "unprofessional or dishonorable conduct likely to deceive or defraud the public."[8]

The conduct referenced in subsection (a)(1) is less precise, but it is nevertheless intended to fall within the same classification; otherwise, categorizing the conduct at all serves no purpose.

We therefore hold that an act that violates state or federal law is subject to disciplinary action by the Board under the Medical Practice Act only if the act is connected with the practice of medicine in a manner that makes it likely to deceive or defraud the public. In turn, we reject the Board's contention that a sufficient connection exists solely by virtue of the fact that Dr. Aleman certified the death certificate in his capacity as J.S.'s physician. *See* TEX. HEALTH & SAFETY CODE § 193.005(a) (explaining when the medical certification should be obtained from the decedent's attending physician). Construing the scope of the required connection as broadly as the Board suggests contravenes fundamental interpretation principles by favoring microscopic examination of isolated words over consideration of the statute as a whole.[9] It also requires the phrase "likely to deceive or defraud the public" to be effectively read out of the statute entirely, violating another basic tenet of statutory construction. Contrary to the Board's assertion, there is no indication that the Legislature intended to authorize disciplinary action under sections

---

[8] The dissent opines that failing to adequately supervise subordinates, writing prescriptions for known narcotic abusers, and prescribing nontherapeutic treatments do not necessarily constitute conduct that is likely to deceive or defraud the public. *Post* at ___. We disagree. Failing to supervise subordinates gives patients a false sense of that person's authority and control, and prescribing drugs to narcotic abusers or prescribing nontherapeutic treatments gives others the false impression that the drug or treatment is appropriate.

[9] The concurrence would hold that Dr. Aleman's conduct does not satisfy section 164.053(a)(1) because the statute requires the affirmative commission of an act, and Dr. Aleman is being accused only of failing to act—specifically, failing to certify electronically. *Post* at ___. We do not view the statute so narrowly. Leaving aside that almost any conduct can be characterized as both acting and failing to act depending on how it is presented—for example, running a stop sign vs. failing to stop at a stop sign—the allegations against Dr. Aleman are premised on his actions. The Board alleged, and the ALJ found, that Dr. Aleman certified J.S.'s death certificate manually in contravention of the Health and Safety Code's requirement that he do so electronically. In other words, the complained-of conduct involves the manner in which Dr. Aleman certified the death certificate, which is an affirmative act.

14

164.052(a)(5) and 164.053 for conduct that is not in fact "likely to deceive or defraud the public." That is, in identifying qualifying behavior, the Legislature did not alter the meaning of the phrase "unprofessional or dishonorable conduct likely to deceive or defraud the public" to include conduct that is not likely to do either.

Indeed, by providing a finite list of acts in section 164.053 that constitute "unprofessional or dishonorable conduct likely to deceive or defraud the public" for purposes of section 164.052(a)(5), the Legislature chose to allow sanctions for some acts that fall within this overarching description but not others. Section 164.053 thus *narrows* the category's scope. But under the Board's reading, subsection (a)(1) simultaneously broadens that scope by incorporating conduct that goes beyond the category's unambiguous parameters. This reading is both internally inconsistent and, again, ignores the Legislature's choice to categorize the conduct in the first instance.

Applying sections 164.052 and 164.053 to the facts at hand, Dr. Aleman's conduct—medically certifying a death certificate using pen and paper rather than the approved electronic system—clearly does not qualify as an act that is connected with the practice of medicine in a manner likely to deceive or defraud the public. Regardless of the method used to complete the medical certification process, the information required is the same, the statutory deadlines are the same, and the certificate's destination—filing with the local registrar—is the same.[10] *See id.* § 193.003. The effect on the public is likewise the same. By contrast, certainly a physician's failure to provide *accurate* information on a death certificate could be classified as connected

---

[10] Each local registrar is required to send all registered birth and death certificates to the state registrar on a monthly basis. TEX. HEALTH & SAFETY CODE § 191.029. The state registrar must "arrange, bind, and permanently preserve [the certificates] in a systematic manner." *Id.* § 191.032.

with the practice of medicine in a manner "likely to deceive or defraud the public," as it would amount to the inclusion of false information in a legally significant public document.

The Board insists that the electronic certification requirement serves an important public purpose by promoting the prompt issuance of death certificates, thereby reducing delays in various postmortem legal proceedings. That may very well be, but if anything it proves the point. Requiring electronic certification may address inefficiencies in the process, but it in no way addresses fraud or deception.[11] And we fail to see how disciplining a physician for failing to comply with that requirement comports with the express policy behind the Act: "to protect the public interest" by "regulat[ing] the granting of [the] privilege [of practicing medicine] and its subsequent use and control." TEX. OCC. CODE § 151.003(1); *see also Sanchez v. Tex. State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 514 (Tex. App.—Austin 2007, no pet.) (noting that "section 164.052 reflects a broader intent to prevent unqualified or otherwise unfit individuals from practicing medicine").

Further, potential fact patterns readily come to mind that only heighten the concerns associated with the Board's overly broad interpretation. For example, suppose a physician were cited for speeding while on the way to the hospital to deliver a baby. The physician has likely violated a state law, *see* TEX. TRANSP. CODE §§ 545.351–.352, and under the Board's interpretation the physician's "act" is at least arguably "connected with" his practice of medicine. Again, however, disciplining such conduct is not consistent with either the Act's language— properly construed as a whole—or its purpose. Rather, the statute reflects legislative intent not

---

[11] The dissent implies that we have imposed our own subjective view of what fits within the category's description. *Post* at ___. But not even the Board argues that the conduct at issue does so. Instead, it (and the dissent) argue that we should ignore the language the Legislature chose to describe this category altogether.

16

to allow such conduct, which is in no way connected with the practice of medicine in a manner that makes the act likely to deceive or defraud the public, to be the proper subject of a disciplinary proceeding.[12]

Accordingly, we hold that a physician's act of completing the medical certification for a death certificate manually rather than by using the approved electronic process does not constitute a "prohibited practice" under section 164.052 of the Medical Practice Act, and section 164.051 in turn does not authorize the Board to take disciplinary action against a person for such conduct. Because the Board relied on an erroneous interpretation of the Medical Practice Act to discipline Dr. Aleman, it necessarily abused its discretion in doing so. We therefore reverse the court of appeals' judgment to the extent it upholds the portions of the Board's order (1) concluding that Dr. Aleman violated the Medical Practice Act and (2) imposing sanctions against him.[13]

## C. Attorney's Fees

Finally, Dr. Aleman argues that the ALJ abused its discretion in failing to award him attorney's fees as sanctions under Texas Civil Practice and Remedies Code chapter 10 and Texas Rule of Civil Procedure 13. Dr. Aleman contends that some of the allegations against him in the formal complaint—specifically, that he violated Health and Safety Code section 193.002(4) and that aggravating factors warranted more severe discipline—were groundless and brought in bad

---

[12] The dissent accuses the Court of rewriting the statute to avoid what we perceive as a troubling result. *Post* at ___. To the contrary, we interpret the statute as a whole and in context to conclude that the *Legislature* intended to avoid this result. *Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 893 (Tex. 2017) ("[T]he truest measure of what the Legislature intended is what it enacted.").

[13] Dr. Aleman alternatively argues that any violation of the electronic certification requirement was excused because it was impossible for him to certify J.S.'s death certificate electronically after it was dropped to paper without his knowledge by the funeral director. He also argues that, to the extent sanctions were authorized, the particular sanction imposed by the Board was so severe as to constitute an abuse of discretion. In light of our holding that Dr. Aleman did not violate the Medical Practice Act, we need not reach these issues.

faith, justifying an award of attorney's fees as sanctions. The Board concluded that SOAH was not authorized to award attorney's fees in this proceeding, and we agree.

As a state agency, SOAH has those powers the Legislature expressly confers, along with "whatever powers are reasonably necessary to fulfill its express functions or duties." *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex. 2001). Section 2003.0421(a) of the Administrative Procedure Act generally authorizes an ALJ employed by SOAH to "impose appropriate sanctions as provided by Subsection (b) against a party or its representative" for filing a pleading that is groundless and brought in bad faith or for an improper purpose. TEX. GOV'T CODE § 2003.0421(a)(1). Subsection (b) then provides:

> (b) A sanction imposed under Subsection (a) may include, as appropriate and justified, issuance of an order:
>
>> (1) disallowing further discovery of any kind or of a particular kind by the offending party;
>>
>> (2) charging all or any part of the expenses of discovery against the offending party or its representatives;
>>
>> (3) holding that designated facts be considered admitted for purposes of the proceeding;
>>
>> (4) refusing to allow the offending party to support or oppose a designated claim or defense or prohibiting the party from introducing designated matters in evidence;
>>
>> (5) disallowing in whole or in part requests for relief by the offending party and excluding evidence in support of those requests; and
>>
>> (6) striking pleadings or testimony, or both, in whole or in part.

*Id.* § 2003.0421(b). The authorized sanctions do not include issuance of an order awarding attorney's fees.

By contrast, a similar provision of the Administrative Procedure Act authorizing SOAH to impose sanctions in contested cases involving the Public Utility Commission expressly includes as a permissible sanction "an order . . . requiring the offending party or its representative to pay . . . the reasonable expenses, including attorney's fees, incurred by other parties because of the sanctionable behavior." *Id.* § 2003.049(j)(7). This provision demonstrates that the Legislature has chosen to grant SOAH authority to award attorney's fees in certain circumstances, but not in the context of a disciplinary proceeding against a licensed physician.

Dr. Aleman thus relies on Civil Practice and Remedies Code chapter 10 and Texas Rule of Civil Procedure 13, which "allow a trial court to sanction an attorney or a party for filing motions or pleadings that lack a reasonable basis in fact or law." *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). Sanctions imposed under these provisions may include attorney's fees. TEX. CIV. PRAC. & REM. CODE § 10.004(c)(3); TEX. R. CIV. P. 13, 215.2(b)(8). But as the Attorney General of Texas has opined, chapter 10 and rule 13 apply to courts, not administrative agencies. Tex. Att'y Gen. Op. No. JC-0495 (2002) (citing *State v. Flag-Redfern Oil Co.*, 852 S.W.2d 480, 486 n.7 (Tex. 1993) (explaining that an "administrative agency is not a 'court' and its contested case proceedings are not lawsuits")). And Dr. Aleman references no statutory authority directing these provisions to be applied to SOAH in this type of proceeding. Accordingly, the Board correctly held that Dr. Aleman is not entitled to recover attorney's fees.

### III. Conclusion

We hold that (1) the Board had jurisdiction over this proceeding, (2) the Board abused its discretion in finding that Dr. Aleman violated the Medical Practice Act, and (3) Dr. Aleman is

19

not entitled to attorney's fees. Accordingly, we affirm the court of appeals' judgment in part, reverse it in part, and render judgment vacating the sanctions imposed against Dr. Aleman.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** May 24, 2019