# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00348-CV

**Appellant, Glenn Hegar, Texas Comptroller of Public Accounts // Cross-Appellants, Arnulfo P. Alcorta; Jose Abram Alcorta; Reyes Alcorta; Armando Alvarado, Jr.; David A. Arizmendi; Teresa Arizmendi-Gordon; Adela A. Bautista; Guadalupe Cantu, Jr.; Jose Angel Gomez Cantu; Julian Jesus Torres Cantu; Olga Cantu; Olivia T. Cantu; Hortencia Cantu Castillo; Carmelo Cordero; Guadalupe Torres Corona; Margarita Diaz; Maria Torres Galvan; Frances A. Garcia; Guadalupe S. Gonzales; Julia C. Gonzalez; Maria Christina Gonzales; Pedro T. Guajardo; Juanita T. Hernandez; Margarita T. Hernandez; Brandon R. Hugonnett; Christopher Hugonnett; Jose Luis Hugonnett; Manuel Hugonnett; Maria Guadalupe Hugonnett; Ricardo Guillermo Hugonnett; Shawn Hugonnett; Cleofas Torres Juarez; Dora Alicia Medina; Aurora Diana Cantu Mejia; Rosalinda Cantu Pena; Edwardo Ramos, Jr.; Eloyd D. Ramos; Linda A. Rios; Carmen Rodriguez; Maria Del Rosario Rodriguez; Carlos Salazar; Velma Thies; Beatris Torres; Cosme Torres, Jr.; James Torres; Jose Angel Torres; Jose Luis Torres; Marcelina Torres; Raul Torres; Alfredo R. Torrez; Miguel Torrez; Isabel C. Vasquez; Mary T. Venable, and Irma Salazar Villanueva**

**v.**

**Appellees, Arnulfo P. Alcorta, Jose Abram Alcorta; Reyes Alcorta; Armando Alvarado, Jr.; David A. Arizmendi; Teresa Arizmendi-Gordon; Adela A. Bautista; Guadalupe Cantu, Jr.; Jose Angel Gomez Cantu; Julian Jesus Torres Cantu; Olga Cantu; Olivia T. Cantu; Hortencia Cantu Castillo; Carmelo Cordero; Guadalupe Torres Corona; Margarita Diaz; Maria Torres Galvan; Frances A. Garcia; Guadalupe S. Gonzales; Julia C. Gonzalez; Maria Christina Gonzales; Pedro T. Guajardo; Juanita T. Hernandez; Margarita T. Hernandez; Brandon R. Hugonnett; Christopher Hugonnett; Jose Luis Hugonnett; Manuel Hugonnett; Maria Guadalupe Hugonnett; Ricardo Guillermo Hugonnett; Shawn Hugonnett; Cleofas Torres Juarez; Dora Alicia Medina; Aurora Diana Cantu Mejia; Rosalinda Cantu Pena; Edwardo Ramos, Jr.; Eloyd D. Ramos; Linda A. Rios; Carmen Rodriguez; Maria Del Rosario Rodriguez; Carlos Salazar; Velma Thies; Beatris Torres; Cosme Torres, Jr.; James Torres; Jose Angel Torres; Jose Luis Torres; Marcelina Torres; Raul Torres; Alfredo R. Torrez; Miguel Torrez; Isabel C. Vasquez; Mary T. Venable, and Irma Salazar Villanueva, // Cross-Appellee, Glenn Hegar, Texas Comptroller of Public Accounts**

## MEMORANDUM OPINION

These cross appeals arise from a dispute over unclaimed mineral royalties held by the Texas Comptroller of Public Accounts. *See generally* Tex. Prop. Code §§ 71.001–.308 ("Unclaimed Property Act"). Arnulfo Alcorta and 53 others (collectively, the Alcortas) sued the Comptroller alleging that he failed to decide their claim to the royalties within the statutory time period. *See id.* § 74.506(b) (waiving sovereign immunity if Comptroller fails to decide claim within ninety days). The Comptroller filed a plea to the jurisdiction which the district court sustained in part and denied it in part. We will affirm.

## STATUTORY FRAMEWORK

"The Unclaimed Property Act defines property that is presumed abandoned and prescribes a process for reporting and delivering it to the Comptroller to be held perpetually for the owner." *Highland Homes Ltd. v. State*, 448 S.W.3d 403, 408 (Tex. 2014). Under the Act, the holder of abandoned property—including mineral royalties and other unclaimed sums—must deliver the property to the Comptroller with a report including, if known, the name and address of the owner or "any person who is entitled to the property." *See* Tex. Prop. Code §§ 74.301(a), .101. The Comptroller must keep records for each item or sum of money delivered, *see id.* §§ 74.307, .601(a), and is responsible to the owner for it*, see id.* § 74.304.

Subchapter F of the Act creates a procedure to recover such property by filing a claim with the Comptroller. *See generally id.* §§ 74.501–.509. The claim "must be filed in accordance with procedures, contain the information, and be on forms prescribed by the

[C]omptroller." *Id.* § 74.501(c). The Comptroller "shall review the validity of each claim" and, if the Comptroller "determines that a claim is valid, the [C]omptroller . . . may approve the claim." *See id.* § 74.501(d)(1)–(4). Section 74.506 waives sovereign immunity and allows a claimant to sue if "aggrieved by the decision of a claim filed under this subchapter" or if "a claim has not been decided before the 91st day after the day on which it was filed[.]" *See id.* § 74.506(a)–(c). The district court shall try the action de novo and apply the rules of practice of the court. *Id.* § 74.506(d).

## FACTUAL BACKGROUND

The Alcortas' claims date to 1852, when the State of Texas confirmed the Padre Island, La Feria, San Juan de Carricitos, Llano Grande, and Ojo de Agua land grants, among others. *See* Act approved Feb. 10, 1852, 4th Leg., R.S., 1852 Tex. Gen. Laws 63, 63–71, *reprinted in* 3 H.P.N. Gammel, *The Laws of Texas, 1822-1897*, at 941–48 (Austin, Gammel Book Co., 1898). Each of the Alcortas claim to be the "lawful heir" of an original grantee and, therefore, the true owner of a portion of the lands within the grants.[1] However, because none of the Alcortas possess a recorded property interest in those lands, none of them would have been listed as the owner of any unclaimed royalties reported to the Comptroller.

This reality prevented the Alcortas from filing a claim through the Comptroller's online claims system, www.claimittexas.org. That website creates a multi-step process for filing a claim. The first step in the process is to search the Comptroller's records of unclaimed

---

[1] The grants collectively encompass approximately a million acres of land in south Texas. Persons claiming to be heirs of the original grantees have litigated their claims for decades. *See, e.g.*, *De Lourett v. Kerlin*, 182 F.2d 750 (5th Cir. 1950); *Kerlin v. Sauceda*, 263 S.W.3d 920 (Tex. 2008); *State v. Balli*, 190 S.W.2d 71 (Tex. [Comm'n Op.] 1944).

property.  At all relevant times, searching the website required entering the name of a person who would have been reported to the Comptroller as the owner of abandoned property.[2]  The Alcortas alleged that they filed a claim to the royalties in September 2017 and sued the Comptroller after the claim was not decided.[3]  The Comptroller filed a plea to the jurisdiction arguing that the Alcortas had not filed or attempted to file a claim.

On March 12, 2018, two of the Alcortas appeared at the Comptroller's office to file a new claim (March Claim).  They met with an employee of the Comptroller's Unclaimed Property Division and presented him with "claim forms" and supporting documentation.  The forms consisted of printed screenshots from claimittexas.org with handwritten entries.  Instead of providing an owner's name, they attached a list of claimants.  On the fields that would display information concerning the property to be claimed, they wrote "unclaimed mineral proceeds" and the names of the five land grants.  After unsuccessfully searching claimittexas.org for the first five claimants, the employee allegedly then "threw the claim forms down onto the floor," instructed another employee to shred them, and told the plaintiffs that they had "filed nothing."

After more than ninety days had passed, the Alcortas amended their pleadings to seek review of the March Claim.  Their amended petition added claims for declaratory relief under the Uniform Declaratory Judgment Act (UDJA).  *See* Tex. Civ. Prac. & Rem. Code § 37.004(a).  The Comptroller filed an amended plea to the jurisdiction asserting sovereign immunity and, with respect to the UDJA claims, the redundant remedies doctrine.  The district

---

[2]  The parties represented at oral argument that claimittexas.org now enables searches for properties reported without an owner.

[3]  We take the following summary from the Alcortas' pleadings and attached affidavits, and evidence admitted by the district court at the hearing on the plea to the jurisdiction.

court denied the plea with respect to the "claims under Property Code Section 74.506" and sustained it with respect to the UDJA claims. Both sides appealed.

## LEGAL STANDARDS

Sovereign immunity prohibits suits against the State without its consent. *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, 571 S.W.3d 738, 746 (Tex. 2019). Immunity from suit is properly asserted in a plea to the jurisdiction because it "implicates the courts' subject-matter jurisdiction to resolve a dispute against the state." *Id.* When the government challenges jurisdiction on immunity grounds, "the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *See Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam) (quoting *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)).

We review a trial court's disposition of a plea to the jurisdiction de novo. *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018). "In doing so, we consider the pleadings, factual assertions, and all relevant evidence in the record." *Id.* We construe the plaintiff's pleadings liberally to "determine whether the facts alleged affirmatively demonstrate the court's jurisdiction to hear the matter." *Id.* When the jurisdictional challenge implicates the merits, as here, the trial court reviews evidence submitted by the parties to determine whether a fact issue exists. *See Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). The trial court's review "generally mirrors the summary judgment standard." *Id.* "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* (quoting *Texas Dep't of Parks & Wildlife v. Miranda*,

133 S.W.3d 217, 227 (Tex. 2004)). But if the evidence is undisputed or fails to raise a fact issue, the trial court rules on the plea as a matter of law. *Id.* (citing *Miranda*, 133 S.W.3d at 228).

## COMPTROLLER'S APPEAL

The Comptroller argues that the district court erred by concluding it possessed jurisdiction over the Alcortas' suit. Specifically, the Comptroller asserts that the March Claim is not a "claim" for purposes of subchapter F.[4] The Alcortas respond that a fact question exists on whether the March Claim constitutes a claim.

These arguments raise questions of statutory construction, which we review de novo. *Aleman v. Texas Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019). Our objective in construing a statute is to ascertain and give effect to the Legislature's intent. *Id.* We generally rely on the plain meaning of the statutory text as expressing that intent, but "we cannot construe the Legislature's chosen words and phrases in isolation." *Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 (Tex. 2019). Instead, we analyze statutes "as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded." *Texas Workforce Comm'n v. Wichita County*, 548 S.W.3d 489, 492 (Tex. 2018) (quoting *Sommers for Alabama & Dunlavy, Ltd. v. Sandcastle Homes, Inc.*, 521 S.W.3d 749, 754 (Tex. 2017)). "In that vein, we take statutes as we find them and refrain from rewriting the Legislature's text." *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017).

The Act does not define "claim," so we begin with the term's dictionary definition. *See Texas State Bd. of Exam'rs of Marriage & Family Therapists v. Texas Med.*

---

[4] The Alcortas state that they "focus solely" on the March Claim on appeal.

6

*Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017) ("To determine a statutory term's common, ordinary meaning, we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities."). The dictionary defines a claim in relevant part as "[a] demand for money, property, or a legal remedy to which one asserts a right." *See Claim*, *Black's Law Dictionary* (11th ed. 2019). The Comptroller invites us to further define "claim" as referring to a specific subset of demands. Citing various other provisions of the Act, *see, e.g.*, Tex. Prop. Code §§ 74.301(b) (addressing Comptroller's authority to approve claims), .307 & .601(a) (requiring Comptroller to keep records for each item or sum of money delivered); .304(d) (providing Comptroller is responsible to owner "to the extent of the property delivered"), the Comptroller argues that we should define the term as a demand "for specific property identified by the claimant that is in the possession of the Comptroller."

However, the Legislature specifically waived immunity for suits complaining of the Comptroller's decision (or failure to decide) "a claim filed under this subchapter," that is, subchapter F. Tex. Prop. Code § 74.506(a). By employing this language, the Legislature incorporated subchapter F's other provisions to define the scope of the waiver. *Cf. Zachry Const. Corp. v. Port of Hou. Auth. of Harris Cty*, 449 S.W.3d 98, 108 (Tex. 2014) (holding statutory waiver of immunity "subject to the terms and conditions of this subchapter" "incorporates the other provisions of the Act to define the scope of its waiver of immunity" (citing Tex. Loc. Gov't Code § 271.152)). Only one part of subchapter F addresses the characteristics of a claim: "All claims to which this section applies must be filed in accordance with procedures, contain the information, and be on forms prescribed by the [C]omptroller." *See* Tex. Prop. Code § 74.501(c). Under the plain meaning of this provision, section 74.501 does not apply to a claim that fails to meet subsection 74.501(c)'s requirements. The Comptroller has no

7

duty to review such a claim, *see id.* § 74.501(a) (directing Comptroller to "review the validity of each claim filed under this section"), and there is no waiver of immunity for suits complaining of the Comptroller's failure to decide the claim, *see id.* § 74.506(b) (waiving immunity if claim not decided certain number of days after "it was filed"). Subchapter F's text and structure support that complying with subsection 74.501(c) is the only prerequisite to qualify as a claim.

The provisions cited by the Comptroller do not compel a different conclusion. Each pertains to a different part of the process created by the Act and does not expressly address what constitutes a claim. Even though the Comptroller is correct as a general matter that we must construe the Act "as a cohesive, contextual whole," *see Texas Workforce Comm'n*, 548 S.W.3d at 492, we must not rewrite the statute's text when doing so, *see Cadena Comercial*, 518 S.W.3d at 326 ("[W]e take statutes as we find them and refrain from rewriting the Legislature's text."). The Legislature specifically addressed what constitutes "a claim filed under" subchapter F, and we may not add to its language. *See Railroad Comm'n v. Gulf Energy Expl. Corp.*, 482 S.W.3d 559, 567 (Tex. 2016) (rejecting interpretation of statute that "impermissibly adds language and alters the statute's plain meaning" (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 872 (Tex. 2014))). Taking subchapter F as we find it, we conclude that a claim for unclaimed money or property constitutes "a claim filed under" subchapter F if it meets the requirements of subsection 74.501(c).

Having so concluded, we conclude that the March Claim constitutes "a claim filed under" subchapter F if it was "filed in accordance with procedures, contain[s] the information, and [is] on forms prescribed by the [C]omptroller." *See* Tex. Prop. Code § 74.501(c). The Alcortas assert that a fact issue exists concerning whether the March Claim met those requirements, but the Comptroller responds that the evidence is undisputed that it did not. A fact

8

issue exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). In determining whether a fact issue exists, we "take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018) (citing *Miranda*, 133 S.W.3d at 228).

The Comptroller argues that no fact issue exists because the March Claim was not filed through the website, the sole procedure prescribed by the Comptroller for filing claims. But the Comptroller does not explain how it prescribed the website as the sole procedure for filing a claim, and there was evidence before the court that the Comptroller accepted the March Claim even though it was not filed through the website. Shortly after the March 12, 2018 meeting at the Comptroller's office ended, the Alcortas' counsel emailed one of the assistant attorneys general representing the Comptroller, stating that he considered the March Claim to have been rejected. The assistant attorney general responded:

> The papers your clients brought [into] the unclaimed property division on March 12, 2018, were *gathered and submitted as a claim*—they were not destroyed. I have attached these documents so you may inspect for yourself. [Comptroller Special Counsel for General Litigation] Murl Miller left you a voice message last week advising you of this, and he asked me to let you know—in his words—that "the unclaimed property division has accepted the Alcortas documentation and is reviewing the claims made."
>
> *The claim filed by your clients on March 12, 2018 has not been rejected.*

(emphasis added). Additionally, the assistant director of the Comptroller's Unclaimed Property Division testified in a deposition that division employees searched the Comptroller's records "for any property in the names that are listed here in the [March Claim]." Viewing this evidence in

9

the light most favorable to the Alcortas and indulging all reasonable inferences in their favor, *see Alamo Heights*, 544 S.W.3d at 771, we conclude that a fact issue exists on whether the March Claim was filed in compliance with subsection 74.501(c). The district court correctly denied the Comptroller's plea to the jurisdiction with respect to the Alcortas' statutory claim. *See Chambers-Liberty Ctys. Navigation Dist.*, 575 S.W.3d at 345 (explaining that if "evidence creates a fact question regarding the jurisdictional issue, . . . the fact issue will be resolved by the fact finder." (quoting *Miranda*, 133 S.W.3d at 227–28)).

We overrule the Comptroller's issues on appeal.

## THE ALCORTAS' CROSS-APPEAL

The Alcortas argue in a cross-appeal that the district court erred by concluding it lacked jurisdiction over the UDJA claims. The Comptroller argued that sovereign immunity and the redundant remedies doctrine defeated the district court's subject-matter jurisdiction. We address the redundant remedies doctrine first because it is dispositive.

"Under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels." *Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 79 (Tex. 2015). "The focus of the doctrine is on the initiation of the case, that is, whether the Legislature created a statutory waiver of sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA." *Id.*; *see Texas Mun. Power Agency v. Public Util. Comm'n of Tex.*, 253 S.W.3d 184, 200 (Tex. 2007) ("An action for declaratory judgment will not be entertained if there is pending, at the time it is filed, another action or proceeding between the same parties and

10

in which may be adjudicated the issues involved in the declaratory judgment action." (quoting *Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970))).

The Alcortas asked the district court to declare that:

- Each of the Alcorta Plaintiffs is a lawful heir of an original grantee of the Padre Island, La Feria, San Juan de Carricitos, Llano Grande, and Ojo de Agua grants;

- They are therefore "entitled to receive unclaimed property [derived from the five land grants] under Texas law or [C]omptroller policy";

- The Comptroller possesses unclaimed mineral royalties and other monies derived from those lands;

- The Alcorta Plaintiffs "filed, or attempted to file" claims for those sums with the Comptroller;

- The Comptroller "did not decide" and "did not pay [the Alcorta] Plaintiffs' claims";

- The Alcorta Plaintiffs "are entitled to receive payment of their proportionate share of the [royalties]" held by the Comptroller;

- "The amount of [royalties] held by [the Comptroller] which should be paid to [the Alcorta] Plaintiffs."

The Alcortas argue that these claims are not redundant of their statutory claim because a court trying an action under section 74.506 could not make findings on the "identity of the specific property made the basis" of a claim or the amount. They apparently assume that a suit under section 74.506 is limited to the record before the Comptroller, but section 74.506 instead directs the court to try the action de novo. *See* Tex. Prop. Code § 74.506(d) ("A court shall try an action filed under this section de novo and shall apply the rules of practice of the court."). In a trial de novo, the court "is not confined to the same evidence that was presented" to the agency, *see Willacy County Appraisal District v. Sebastian Cotton & Grain*, 555 S.W.3d 29,

11

50 (Tex. 2018), but "shall try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision," *id.* (quoting *PR Investments & Specialty Retailers, Inc. v. State*, 251 S.W.3d 472, 476 (Tex. 2008)). Thus, trial of any suit under section 74.506 would necessarily involve findings on the same issues covered by the Alcortas' requested declarations. *See id.* Because the UDJA claims would determine the same issues as the Alcortas' statutory remedy, the district court correctly decided that it lacked jurisdiction to adjudicate the UDJA claims under the redundant remedies doctrine. *See Patel*, 469 S.W.3d at 79; *Texas Mun. Power Agency*, 253 S.W.3d at 200.

We overrule the Alcortas' appellate issues.

## CONCLUSION

We affirm the district court's order sustaining the plea to the jurisdiction in part and denying it in part.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed: April 29, 2020

12